[Crim. No. 8528. In Bank. May 25, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ED-
WARDS WASHINGTON, Defendant and Appellant.

Erling J. Hovden, Public Defender, Paul G. Breckenridge, Jr., and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant appeals from a judgment of conviction entered upon jury verdicts finding him guilty of first degree robbery (Pen. Code, §§ 211, 211a) and first degree murder and fixing the murder penalty at life imprisonment. (Pen. Code, §§ 187, 189, 190, 190.1.)[1] He was convicted of murder for participating in a robbery in which his accomplice was killed by the victim of the robbery.

Shortly before 10 p.m., October 2, 1962, Johnnie Carpenter prepared to close his gasoline station. He was in his office computing the receipts and disbursements of the day while an attendant in an adjacent storage room deposited money in a vault. Upon hearing someone yell "robbery," Carpenter opened his desk and took out a revolver. A few moments later, James Ball entered the office and pointed a revolver directly at Carpenter, who fired immediately, mortally wounding Ball. Carpenter then hurried to the door and saw an unarmed man he later identified as defendant running from the vault with a moneybag in his right hand. He shouted "Stop." When his warning was not heeded, he fired and hit defendant who fell wounded in front of the station.

The Attorney General, relying on *People* v. *Harrison,* 176

---

[1]Defendant's appeal from the nonappealable order denying a new trial is dismissed. (Pen. Code, § 1237, subd. 2.)

Cal.App.2d 330 [1 Cal.Rptr. 414], contends that defendant was properly convicted of first degree murder. In that case defendants initiated a gun battle with an employee in an attempt to rob a cleaning business. In the crossfire, the employee accidentally killed the owner of the business. The court affirmed the judgment convicting defendants of first degree murder, invoking *Commonwealth* v. *Almeida,* 362 Pa. 596 [68 A.2d 595, 12 A.L.R.2d 183], and *People* v. *Podolski,* 332 Mich. 508 [52 N.W.2d 201], which held that robbers who provoked gunfire were guilty of first degree murder even though the lethal bullet was fired by a policeman.

Defendant would distinguish the *Harrison, Almeida,* and *Podolski* cases on the ground that in each instance the person killed was an innocent victim, not one of the felons. He suggests that we limit the rule of the *Harrison* case just as the Supreme Courts of Pennsylvania and Michigan have limited the *Almeida* and *Podolski* cases by holding that surviving felons are not guilty of murder when their accomplices are killed by persons resisting the felony. (*Commonwealth* v. *Redline,* 391 Pa. 486 [137 A.2d 472]; *People* v. *Austin,* 370 Mich. 12 [120 N.W.2d 766]; see also *People* v. *Wood,* 8 N.Y.2d 48 [201 N.Y.S.2d 328, 167 N.E.2d 736].) A distinction based on the person killed, however, would make the defendant's criminal liability turn upon the marksmanship of victims and policemen. A rule of law cannot reasonably be based on such a fortuitous circumstance. The basic issue therefore is whether a robber can be convicted of murder for the killing of any person by another who is resisting the robbery.

"Murder is the unlawful killing of a human being, with malice aforethought." (Pen. Code, § 187.) ▮ Except when the common-law-felony-murder doctrine is applicable, an essential element of murder is an intent to kill or an intent with conscious disregard for life to commit acts likely to kill. (See *People* v. *Thomas,* 41 Cal.2d 470, 475 [261 P.2d 1] [concurring opinion].) ▮ The felony-murder doctrine ascribes malice aforethought to the felon who kills in the perpetration of an inherently dangerous felony. (*People* v. *Ford,* 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892]; *People* v. *Coefield,* 37 Cal.2d 865, 868 [236 P.2d 570].) That doctrine is incorporated in section 189 of the Penal Code, which provides in part: "All murder ... committed in the perpetration or attempt to perpetrate ... robbery ... is murder of the first degree." Thus, even though section 189

speaks only of degrees of "murder," inadvertent or accidental killings are first degree murders when committed by felons in the perpetration of robbery. (*People* v. *Coefield, supra,* 37 Cal.2d 865, 868; *People* v. *Boss,* 210 Cal. 245, 249 [290 P. 881].)

 When a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate robbery. It is not enough that the killing was a risk reasonably to be foreseen and that the robbery might therefore be regarded as a proximate cause of the killing. Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed to perpetrate the felony. Indeed, in the present case the killing was committed to thwart a felony. To include such killings within section 189 would expand the meaning of the words "murder ... which is committed in the perpetration... [of] robbery ..." beyond common understanding.

 The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit. (See Holmes, The Common Law, pp. 58-59; Model Penal Code (Tent. Draft No. 9, May 8, 1959) § 201.2, comment 4 at pp. 37-38; Report of the Royal Commission on Capital Punishment, Cmd. No. 8932, at pp. 35-36 (1949-1953).) This purpose is not served by punishing them for killings committed by their victims.

 It is contended, however, that another purpose of the felony-murder rule is to prevent the commission of robberies. Neither the common-law rationale of the rule nor the Penal Code supports this contention. In every robbery there is a possibility that the victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken as this case demonstrates. To impose an additional penalty for the killing would discriminate between robbers, not on the basis of any difference in their own conduct but solely on the basis of the response by others that the robber's conduct happened to induce. An additional penalty for a homicide committed by the victim would deter robbery haphazardly at best. To "prevent stealing, [the law] would do better to hang one thief in every thousand by lot." (Holmes, The Common Law, p. 58.)

 A defendant need not do the killing himself, however,

to be guilty of murder. He may be vicariously responsible under the rules defining principals and criminal conspiracies. All persons aiding and abetting the commission of a robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design. (*People* v. *Boss,* 210 Cal. 245, 249 [290 P. 881]; *People* v. *Kauffman,* 152 Cal. 331, 334 [92 P. 861].) Moreover, when the defendant intends to kill or intentionally commits acts that are likely to kill with a conscious disregard for life, he is guilty of murder even though he uses another person to accomplish his objective. (*Johnson* v. *State,* 142 Ala. 70 [38 So. 182, 2 L.R.A. N.S. 897]; see also *Wilson* v. *State,* 188 Ark. 846 [68 S.W.2d 100]; *Taylor* v. *State,* 41 Tex. Crim. Rep. 564 [55 S.W. 961].)

Defendants who initiate gun battles may also be found guilty of murder if their victims resist and kill. Under such circumstances, ''the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death'' (*People* v. *Thomas,* 41 Cal.2d 470, 480 [261 P.2d 1] [concurring opinion]), and it is unnecessary to imply malice by invoking the felony-murder doctrine.[2] To invoke the felony-murder doctrine to imply malice in such a case is unnecessary and overlooks the principles of criminal liability that should govern the responsibility of one person for a killing committed by another. (See Hart and Honoré, Causation in the Law, pp. 296-299; Hall, Criminal Law, 2d ed., pp. 270-281; Morris, *The Felon's Responsibility for the Lethal Acts of Others,* 105 U.Pa.L.Rev. 50; Brett, An Inquiry Into Criminal Guilt, pp. 123-124.)

To invoke the felony-murder doctrine when the killing is not committed by the defendant or by his accomplice could lead to absurd results. Thus, two men rob a grocery store and flee in opposite directions. The owner of the store follows one of the robbers and kills him. Neither robber may have fired a shot. Neither robber may have been armed with a deadly weapon. If the felony-murder doctrine applied, how-

[2]One scholar has commented that ''*People* v. *Harrison,* 176 Cal.App.2d 330, 1 Cal.Rptr. 414 (1959), is probably not, strictly speaking, a felony-murder case at all, but rather a case taking a very relaxed view of the necessary causal connection between the defendant's act and the victim's death, an approach which is possible quite independent of the felony-murder rule.'' (Packer, *The Case for Revision of the Penal Code,* 13 Stan.L.Rev. 252, 259, fn. 39.)

ever, the surviving robber could be convicted of first degree murder (see *Commonwealth* v. *Thomas,* 382 Pa. 639 [117 A.2d 204], overruled by *Commonwealth* v. *Redline,* 391 Pa. 486 [137 A.2d 472]), even though he was captured by a policeman and placed under arrest at the time his accomplice was killed. (*Commonwealth* v. *Doris,* 287 Pa. 547 [135 A. 313]; see *People* v. *Corkery,* 134 Cal.App. 294 [25 P.2d 257].)

The felony-murder rule has been criticized on the grounds that in almost all cases in which it is applied it is unnecessary and that it erodes the relation between criminal liability and moral culpability. (See e.g., Model Penal Code (Tent. Draft No. 9, May 8, 1959) § 201.2, comment 4 at pp. 37-39; Report of the Royal Commission on Capital Punishment, Cmd. No. 8932, at pp. 34-43, 45 (1949-1953); 3 Stephen, History of the Criminal Law of England 57-58, 74-75 (1883); Packer, *The Case for Revision of the Penal Code,* 13 Stan.L.Rev. 252, 259; Morris, *The Felon's Responsibility for the Lethal Acts of Others,* 105 U.Pa.L.Rev. 50; 66 Yale L.J. 427.)[3] Although it is the law in this state (Pen. Code, § 189), it should not be extended beyond any rational function that it is designed to serve. Accordingly, for a defendant to be guilty of murder under the felony-murder rule the act of killing must be committed by the defendant or by his accomplice acting in furtherance of their common design. (*Commonwealth* v. *Campbell,* 89 Mass. 541 [83 Am. Dec. 705]; *Butler* v. *People,* 125 Ill. 641 [18 N.E. 338, 8 Am.St.Rep. 423]; *Commonwealth* v. *Moore,* 121 Ky. 97 [88 S.W. 1085, 2 L.R.A. N.S. 719, 123 Am. St. Rep. 189, 11 Ann. Cas. 1024]; *State* v. *Oxendine,* 187 N.C. 658 [122 S.E. 568]; see also *People* v. *Ferlin,* 203 Cal. 587, 597 [265 P. 230].) Language in *People* v. *Harrison,* 176 Cal.App.2d 330 [1 Cal.Rptr. 414], inconsistent with this holding, is disapproved.

 On his appeal from the robbery conviction, defendant contends that he did not participate in the robbery. He testified that on the evening of the robbery he was with Ball and a man named Johnson. He did not know that they intended to commit robbery. He was "pretty drunk" at the time and fell asleep in the automobile. When he awoke the automobile was parked near Carpenter's gasoline station,

---

[3]The felony-murder rule has been abolished in England (English Homicide Act, § 1, 1957, 5 & 6 Eliz. II, c. 11), and has been converted to a rebuttable presumption of malice by the Model Penal Code. (Model Pen. Code (Tent. Draft No. 9, May 8, 1959) § 201.2.)

and Ball and Johnson were absent. He left the automobile to look for them. As he approached the station, Johnson ran from the vault. Carpenter shot just as Johnson ducked around a corner and dropped the moneybag. Carpenter's bullet hit defendant who fell wounded near the bag that Johnson had dropped.

Defendant's testimony was corroborated by the testimony of James Johnson, an inmate of the state prison for an unrelated crime at the time of defendant's trial. Johnson testified that he was the man who ran from the vault with the moneybag. Carpenter controverted their testimony, however, by identifying defendant as the man who ran from the vault. The evidence is therefore sufficient to support defendant's conviction of robbery.

Defendant contends, however, that the trial court on its own motion should have instructed the jury to view Carpenter's testimony with caution on the ground that it tended to be self-serving because Carpenter "was relieved of any criminal or civil responsibility for the shootings by implicating [defendant] and the deceased in an attempted robbery." All testimony that favors a witness' real or imagined self-interest, however, does not require a cautionary instruction. The testimony of a robbery victim does not come from a "tainted source" as does the testimony of an accomplice (*People* v. *Robinson*, 43 Cal.2d 132, 141 [271 P.2d 865]; *People* v. *Wallin*, 32 Cal.2d 803, 808 [197 P.2d 734]; Code Civ. Proc., § 2061, subd. 4), nor is his testimony like that of a complaining witness in a sex offense, which may be motivated by malice and beyond effective contradiction because it relates to matters that ordinarily take place in secrecy. (*People* v. *Putnam*, 20 Cal.2d 885, 891-892 [129 P.2d 367].) In the present case, there was no such danger of perjury, and defendant had a fair opportunity to controvert the witness' testimony. The court properly instructed the jury that they were the exclusive judges of the credibility of the witnesses and informed them that they might consider such matters as the relation of the witnesses to the case and their interest therein. Although the court could have made "such comment on the evidence and the testimony and credibility of any witness as in its opinion [was] necessary for the proper determination of the case . . ." (Pen. Code, § 1127), it was not required to give a cautionary instruction.

The judgment is affirmed as to defendant's conviction of

first degree robbery and reversed as to his conviction of first degree murder.

Peters, J., Tobriner, J., Peek, J., and White, J.,* concurred.

BURKE, J.—I dissent. The unfortunate effect of the decision of the majority in this case is to advise felons:

"Henceforth in committing certain crimes, including robbery, rape and burglary, you are free to arm yourselves with a gun and brandish it in the faces of your victims without fear of a murder conviction unless you or your accomplice pulls the trigger. If the menacing effect of your gun causes a victim or policeman to fire and kill an innocent person or a cofelon, you are absolved of responsibility for such killing unless you shoot first."

Obviously this advance judicial absolution removes one of the most meaningful deterrents to the commission of armed felonies.

In the present case defendant's accomplice was killed when the robbery victim fired after the accomplice had pointed a revolver at him. In *People* v. *Harrison* (1959) 176 Cal.App. 2d 330 [1 Cal.Rptr. 414] (hearing in Supreme Court denied without a dissenting vote), the rationale of which the majority now disapprove, the robbery victim was himself accidentally killed by a shot fired by his employee after defendant robbers had opened fire, and the robbers were held guilty of murder for the killing. The majority now attempt to distinguish *Harrison* on the ground that there the robbers "initiated" the gun battle; in the present case the victim fired the first shot. As will appear, any such purported distinction is an invitation to further armed crimes of violence. There is no room in the law for sporting considerations and distinctions as to who fired first when dealing with killings which are caused by the actions of felons in deliberately arming themselves to commit any of the heinous crimes listed in Penal Code section 189. If a victim—or someone defending the victim—seizes an opportunity to shoot first when confronted by robbers with a deadly weapon (real or simulated), any "gun battle" *is* initiated by the armed robbers. In such a situation application of the felony-murder rule of section 189 of the Penal Code supports, if not compels, the conclusion that the surviving robbers committed murder even if the lethal bullet did not come from one of their guns,

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

and whether it is an innocent person or an accomplice who dies.

Section 187 of the Penal Code declares that "Murder is the unlawful[1] killing of a human being, with malice aforethought." Section 188 states that "Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away ... life. ... It is implied ... when the circumstances attending the killing show an abandoned and malignant heart."

Section 189 specifies that "All murder which is perpetrated by ... any ... kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate ... robbery [or five other named felonies[2]], is murder of the first degree. ..."

So heinous has the Legislature considered murders in the perpetration of these offenses that it grouped them with murder by means of poison, lying in wait or by torture, and, fundamentally, the law in this respect has remained unchanged for more than one hundred years . (Stats. 1850, p. 231; Stats. 1856, p. 219; now Pen. Code, § 189.)

In *People* v. *Milton* (1904) 145 Cal. 169, 171-172 [78 P. 549], the court pointed out that a killing is unlawful which is "perpetrated in the performance or attempt to perform one of these felonies, and the malice of the abandoned and malignant heart is shown from the very nature of the crime" the defendant is attempting to commit. Thus the killing is established as murder under section 187, in the light of the definition of malice found in section 188, and section 189 makes it first degree murder. Therefore, held the court, even if the killing be accidental or unintentional, if committed in the attempt to perpetrate one of the felonies named in section 189 it is first degree murder.

This principle has been repeatedly upheld by this court (see *People* v. *Raber* (1914) 168 Cal. 316, 318 [143 P. 317]; *People* v. *Witt* (1915) 170 Cal. 104, 107-108 [148 P. 928]; *People* v. *Denman* (1918) 179 Cal. 497, 498-499 [177 P. 461]; *People* v. *Boss* (1930) 210 Cal. 245, 249 [290 P. 881]; *People* v. *Valentine* (1946) 28 Cal.2d 121, 135 [169 P.2d 1]; *People* v. *Coefield* (1951) 37 Cal.2d 865, 868 [236 P.2d 570]), and is expressly recognized by the majority in the instant case with the declaration (*ante,* p. 781) that "inadvertent or acci-

---

[1] I.e., not excusable (§ 195) or justifiable (§§ 196, 197).

[2] I.e., arson, rape, burglary, mayhem, or any act punishable under section 288 (lewd or lascivious acts against children).

dental killings are first degree murders when committed *by* felons *in* the *perpetration of robbery."* (Italics added.) The majority further expressly recognize the rule (*ante,* pp. 781-782-) that "A defendant need not do the killing himself . . . to be guilty of murder. . . . All persons aiding and abetting the commission of a robbery are guilty of first degree murder when one of them kills" in the perpetration of the robbery. (See *People* v. *Boss, supra.*)

Despite these declared principles—long established and effective in their deterrence of crimes of violence—the majority now announce (*ante,* p. 781) that "When a killing is not committed *by* a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed *by him* in the perpetration or attempt to perpetrate robbery. It is not enough that the killing was a risk reasonably to be foreseen. . . . Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed *to* perpetrate the felony. . . . To include such killings within section 189 would expand the meaning of the words 'murder . . . which is committed in the perpetration . . . [of] robbery . . .' beyond common understanding." (Italics added.)

But section 189 carries not the least suggestion of a requirement that the killing must take place *to* perpetrate the felony. If that requirement now be read into the section by the majority, then what becomes of the rule—which they purport to recognize—that an accidental and unintentional killing falls within the section? How can it be said that such a killing takes place *to* perpetrate a robbery?

Moreover, as already noted, the malice aforethought of the abandoned and malignant heart is shown from the very nature of the crime, here armed robbery, the defendant is attempting to commit. (*People* v. *Milton* (1904) *supra,* 145 Cal. 169, 171-172.) This truism was confirmed in *People* v. *Bostic* (1914) 167 Cal. 754, 761 [14 P. 380], wherein the court pointed out that the argument that to be first degree murder a killing during robbery must be planned as a part of the scheme, carries its own refutation, "for it must be apparent that without reference to the robbery such a murder would be a 'wilful, deliberate and premeditated killing,'" and hence, first degree murder; further, said the court, "The moment [defendant] entered that [train] car with a deadly weapon in his hand, with the purpose of committing robbery, the law fixed upon him the intent which would make any

killing in the perpetration of the robbery or in the attempt ...
a murder of the first degree. In such cases the law does not
measure the delicate scruples of the robber with reference to
shooting his victim.'' Again in *People* v. *Coefield, supra* (1951)
37 Cal.2d 865, 868 [2] the court took note of the rule
''that when one enters a place with a deadly weapon for the
purpose of committing robbery, malice is shown by the nature
of the attempted crime.'' This is also the approach of the
general felony-murder doctrine, a doctrine which (the ma-
jority confirm) ascribes malice aforethought where the kill-
ing is in the perpetration of an inherently dangerous felony.
As expressed in *People* v. *Ford* (1964) 60 Cal.2d 772, 795
[36 Cal.Rptr. 620, 388 P.2d 892], cited by the majority, ''A
homicide that is a *direct causal result* of the commission of a
felony inherently dangerous to human life (other than the six
felonies enumerated in Pen. Code, sec. 189) constitutes at
least second degree murder. [Citations.]'' (Italics added.)

A homicide which arises out of an attempt at *armed* robbery
is a direct causal result of the chain of events set in motion
by the robbers when they undertook their felony. When a
victim fires the lethal bullet, whether or not he fires first,
the killing is caused by the act of the felon and the felon is
as responsible therefor as when the firing is by his accomplice
or when it is accidental or unintentional.[3] The majority sug-
gest (*ante,* p. 782), ''it is unnecessary to imply malice
by invoking the felony-murder doctrine'' where the robber
''initiates'' a gun battle by shooting first. This suggestion by
the majority, I respectfully submit, emphasizes the inconsist-
ency of their opinion. First they declare (*ante,* p. 781) that
''When a killing is *not committed by* a robber ... *but by* his
victim, *malice* aforethought is *not attributable to* the *robber,*
for the killing is not committed by him in ... robbery.'' (Ital-
ics added.) Later they state (*ante,* p. 782) that ''*Defendants*
who initiate gun battles *may also be found guilty of murder*
if their *victims* resist and *kill* . . . and it is unnecessary to
imply malice by invoking the felony-murder doctrine.'' (Ital-
ics added.)

---

[3]It should be noted that the doctrine of proximate causation has not
been confined to civil cases. In *People* v. *Monk* (1961) 56 Cal.2d 288,
296 [14 Cal.Rptr. 633, 363 P.2d 865], for example, the defendant made
threats of serious bodily harm to a person whom he had kidnaped for
purposes of robbery, and the threats caused her to jump from an auto-
mobile and receive injuries. This court held that the doctrine of proximate
causation was applicable, that the victim had suffered ''bodily harm''
within the meaning of Penal Code section 209, and that the penalty of
death was proper.

But malice aforethought is an essential element of murder. (Pen. Code, § 187.) If it is not attributable to the robber when a killing is "committed by" his victim rather than by himself in a gun battle initiated by the robber, is the essential malice express—or is it to be implied under some doctrine other than the felony-murder rule? Do the majority imply the malice of the abandoned and malignant heart (Pen. Code, § 188) only if the robber shoots first, but not if he merely creates the foreseeable risk that "the victim will resist and kill"? And this despite the fact that, as the majority further affirm (*ante,* p. 781), "the robbery might therefore be regarded as a proximate cause of the killing"?

Even if, as the majority suggest (*ante,* p. 782), it is unnecessary to imply malice by invoking the felony-murder doctrine where the robber shoots first, that doctrine can and should be invoked in a case in which, as here, a robber with a gun in his hand confronts a victim who can and does resist by firing the first shot. In such a case, the robber "initiated" the criminal plan, he "initiated" it by wilfully, maliciously and wantonly putting the victim in fear of his life, and he "initiated" any resultant shooting, whether by his gun or that of the victim. Where the victim is in a position to shoot first and his bullet kills, the killing should be viewed in law and in fact as having been "committed" by the robber (as it was in *People* v. *Harrison, supra,* 176 Cal.App.2d 330), and application of the felony-murder rule to such circumstances is, in my view, exactly the sort of "rational function that it is designed to serve"—in the phrasing of the majority (*ante,* p. 783).

Extreme examples may be imagined in which the application of a rule of criminal liability would appear manifestly unjust. However, when this court and others have been faced with such an example exceptions have been made to avoid an unconscionable result. To reject invocation of the felony-murder rule here, as do the majority (*ante,* pp. 782-783), because of possible harshness in its application in other circumstances, for example, to fleeing robbers who are *not* armed, dilutes the enforcement of criminal responsibility. The case anticipated and the injustice sought to be protected against by the majority are not before us, and can best be dealt with when and if encountered. It may be observed, however, that robbers are not compelled to flee and thus to be shot at endangering themselves and others. They need only surrender, as many have done, to avoid death, to themselves or others,

and the awesome penalties which attach under the felony-murder law.

I agree with the majority (*ante,* p. 781) that one purpose of the felony-murder rule is to deter felons from killing negligently or accidentally. However, another equally cogent purpose is to deter them from undertaking inherently dangerous felonies in which, as the majority state (*ante,* p. 781), a "killing was a risk reasonably to be foreseen. ... In every robbery there is a possibility that the victim will resist and kill." As declared in *People* v. *Chavez* (1951) 37 Cal.2d 656, 669 [234 P.2d 632], "The statute [Pen. Code, § 189] was adopted for the protection of the community and its residents, not for the benefit of the lawbreaker." Why a felon who has undertaken an *armed* robbery, which this court now expressly notifies him carries a "risk" and "a possibility that the victim will resist and kill," and which "might therefore be regarded as a proximate cause of the killing" should nevertheless be absolved because, fortuitously, the victim can and does shoot first and the lethal bullet comes from the victim's gun rather than from his own, will be beyond the comprehension of the average law-abiding citizen, to say nothing of that of victims of armed robbery. Nor is such a view compatible with the felony-murder doctrine.

But, say the majority, "The robber has little control over such a killing once the robbery is undertaken," and "To impose an additional penalty for the killing would discriminate between robbers, not on the basis of any difference in their own conduct, but solely on the basis of the response by others that the robber's conduct happened to induce." (*Ante,* p. 781). A robber has *no* control over a bullet sent on its way after he pulls the trigger. Certainly his inability to recall it before it kills does not cloak him with innocence of the homicide. The truth is, of course, that the robber may exercise various "controls over" a possible killing from his victim's bullet "once the robbery is undertaken." The robber can drop his own weapon, he can refrain from using it, he can surrender. Other conduct can be suggested which would tend to reassure the victim and dissuade him from firing his own gun. Moreover, the response by one victim will lead to capture of the robbers, while that of another victim will permit their escape. Is the captured felon to be excused from responsibility for his crime, in order not to "discriminate between robbers ... solely on the basis of the response by others that the robber's conduct happened to induce"?

The robber's conduct which forms the basis of his criminal responsibility is the undertaking of the *armed* felony, in which a "killing was a risk reasonably to be foreseen" including the "possibility that the victim will resist and kill." If that risk becomes reality and a killing occurs, the guilt for it is that of the felon. And when done, it is murder in the first degree—calling for death or life imprisonment. And to say that the knowledge that this awesome, sobering, terrifying responsibility of one contemplating the use of a deadly weapon in the perpetration of one of the listed offenses is not the strongest possible deterrent to the commission of such offenses belies what is being demonstrated day after day in the criminal departments of our trial courts.

I would hold, in accord with the rationale of *People* v. *Harrison, supra* (1959) 176 Cal.App.2d 330, that the killing is that of the felon whether or not the lethal bullet comes from his gun or that of his accomplice and whether or not one of them shoots first, and would affirm the judgment of conviction of murder in the instant case.

McComb, J., concurred.

Respondent's petition for a rehearing was denied June 23, 1965. Mosk, J., did not participate therein. McComb J., and Burke, J., were of the opinion that the petition should be granted.