[Crim. No. 17888. Second Dist., Div. Three. Dec. 17, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
GILBERT ANTHONY CALZADA, Defendant and Respondent.

## COUNSEL

David D. Minier, District Attorney, A. Barry Cappello and William J. McCracken, Deputy District Attorneys, for Plaintiff and Appellant.

Robert G. Eckhoff, Public Defender, and Robert D. Taggart, Deputy Public Defender, for Defendant and Respondent.

## OPINION

**COBEY, J.**—The People appeal from an order, made pursuant to Penal Code section 995, which, among other things,[1] sets aside a count of second degree felony murder (see Pen. Code, §§ 187, 189) against Gilbert Anthony Calzada. Calzada has also been charged with vehicular manslaughter (Pen. Code, § 192, subd. 3) and with violation of Vehicle Code section 23105.

The appeal lies. (Pen. Code, § 1238, subd. 1.) The sole issue presented is whether Calzada's allegedly criminal behavior can be charged

---

[1]Sometime ago another division of this court refused to issue a writ of prohibition against other portions of the order suppressing certain evidence. Our Supreme Court has denied hearing in that case (2d Civil No. 36134).

as second degree murder as well as vehicular manslaughter and a violation of Vehicle Code section 23105.

## THE FACTS

Around 8 a.m. on October 15, 1969 a car driven northbound at about 60 miles per hour by Calzada in the outside lane on Highway 101 in Santa Barbara County suddenly straddled the line between that lane and the adjoining lane, rocked back and forth, shot across the planted divider between the northbound and southbound lanes of the four-lane highway and crashed, without warning, into the victim's car which was proceeding southbound in the inside lane. The victim's death resulted from the injuries he received in this collision.

A Santa Barbara police officer who came upon the scene of the accident a few minutes after it occurred found Calzada behind the wheel of his car. The pupils of Calzada's eyes were pinpointed, a characteristic of persons under the influence of opiates. At the hospital, where Calzada was immediately taken by ambulance because of the serious injuries he had suffered in the accident, a nurse in the emergency room saw five fresh punctures in Calzada's veins on the inner side of one of his elbows. She also heard him say, in attempting to explain how the accident happened, that "When you're high on that stuff, you have to like keep moving to keep alive." In response to a hypothetical question, a psychiatrist, who had examined Calzada and many others in the past for narcotics addiction, testified that on the basis of his knowledge of Calzada's past use of heroin, his past addiction to it, the above related circumstances of the accident, his pinpointed eyes and the fresh venipuncture marks on his arm following the accident,[2] Calzada, at the time of the accident, could well have been driving under the influence of narcotic drugs.

## DISCUSSION

The dismissal of the felony-murder count was not based on lack of reasonable or probable cause but on the trial court's conclusion that the felony-murder rule did not apply to this case. All agreed, however, that the felony involved, namely, driving a vehicle on a highway under the influence of narcotic drugs (Veh. Code, § 23105), was one inherently dangerous to human life and therefore within the scope of the rule. (See *People* v. *Williams,* 63 Cal.2d 452, 458, fn. 5 [47 Cal.Rptr. 7, 406 P.2d 647]; *People* v. *Phillips,* 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d

---

[2]In the hypothetical question asked the doctor by the prosecutor reference was also made to the presence of morphine in a sample of Calzada's urine taken after the accident. This sample was part of the evidence suppressed by the court because it was taken involuntarily by catheter.

353].) The trial court believed, however, that this case came within the exception to the rule first enunciated in *People* v. *Ireland,* 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580].

In that case our Supreme Court held that the rule was not to be applied where the underlying felony "is an integral part of the homicide and [one] which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (Italicized in original.) (70 Cal.2d 539.)

In *People* v. *Wilson,* 1 Cal.3d 431 [82 Cal.Rptr. 494, 462 P.2d 22], our Supreme Court clarified its *Ireland* exception by pointing out that under it the felony-murder rule does not apply where the underlying felony is "a necessary ingredient of the homicide" (*idem,* at p. 438) or its elements "were necessary elements in the homicide" (*idem,* at p. 441) and that the rule is to be applied only when the underlying felony is "independent of the homicide." (*Idem,* at pp. 440, 442, fn. 5.)

Applying the clarification of *Wilson* to this case, the underlying felony of Calzada's driving a vehicle upon a highway under the influence of a narcotic drug, heroin, was not a felony included in fact within the homicide. It was not a necessary ingredient of the homicide and its elements were not necessary elements of the homicide. It was complete as soon as Calzada commenced to drive on the highway in this condition. In this sense it was independent of the homicide.

Holding that the *Ireland* exception does not apply to this particular felony under the circumstances of this case accords with the sole justification for the felony-murder rule. This justification is to discourage the commission of felonies inherently dangerous to human life by holding for murder those who kill, intentionally or unintentionally, in the course of such felonies. (See *People* v. *Washington,* 62 Cal.2d 777, 781 [44 Cal. Rptr. 442, 402 P.2d 130].) This deterrent purpose is not served in the case of felonious assaults, resulting in homicides, such as those involved in *Ireland, Wilson,* and *People* v. *Sears,* 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], the three decisions of our Supreme Court on the *Ireland* exception to the rule. These assaults, according to *Ireland,* constitute the great majority of all homicides (70 Cal.2d 522, 539), but, according to *Wilson,* since they are an integral part of the homicides their commission could not be deterred by application of the rule. (1 Cal.3d 431, 440.) This is not the situation here where the underlying felony is distinct from the resulting homicide.

Our holding also accords with the recent decision of another division of this court in *People* v. *Taylor,* 11 Cal.App.3d 57 [89 Cal.Rptr. 697],

which held that the Ireland exception does not apply to the felony of furnishing heroin to another. This decision appears to rest, however, primarily upon a theory developed in certain New York cases that the exception (there called the "merger" doctrine) should not apply to felonies committed with a collateral and independent felonious design. (*Taylor, supra,* at pp. 60-61.) This theory applies to this case, but we prefer not to follow *Taylor* in its emphasis upon it in view of the fact that our Supreme Court in *Ireland* was careful to point out that it was not adopting the "merger" doctrine as such from New York and certain other states, but merely its reasoning to the extent that the reasoning was consistent with the laws and policies of this state (70 Cal.2d 522, 540) and in view of the further fact that in *Sears* our Supreme Court deviated from the "merger" doctrine as developed in New York. (2 Cal.3d 180, 189; *People v. Luscomb,* 292 N.Y. 390 [55 N.E.2d 469, 472].)

Whether the *Ireland* exception would extend to felony drunk-driving is, of course, not before us. We do note, however, that the two felonies (Veh. Code, §§ 23101, 23105) differ in that the felony of drunk driving is not complete until bodily injury is proximately caused to some person other than the drunken driver.

The order, to the extent that it dismisses count I of the information alleging a violation of Penal Code section 187, is reversed.

Schweitzer, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied January 13, 1971.