[Crim. No. 22872. Apr. 16, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
LINDA LEE SMITH, Defendant and Appellant.

800

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Antonia D. Radillo, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James Ching, Gregory W. Baugher and Margaret E. Garnand, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant appeals from a judgment convicting her of second degree murder (Pen. Code, § 187),[1] felony child abuse (§ 273a, subd. (1)), and child beating (§ 273d). The court sentenced her to imprisonment for 15 years to life on the murder count (§ 190) and stayed service of sentence on the 2 remaining counts to avoid double punishment (§ 654). The principal issue on appeal is whether felony child abuse may serve as the underlying felony to support a conviction of second degree murder on a felony-murder theory. We conclude that because the acts constituting such child abuse in the present case were an integral part of the homicide, the offense merged into the homicide; it was therefore error to give a felony-murder instruction, and the judgment must be reversed insofar as it convicts defendant of second degree murder.

Defendant and her two daughters, three-and-a-half-year-old Bethany (Beth) and two-year-old Amy, lived with David Foster. On the day Amy died,[2] she refused to sit on the couch instead of the floor to eat a snack. Defendant became angry, took Amy into the children's bedroom, spanked her and slapped her in the face. Amy then went towards the corner of the bedroom which was often used for discipline; defendant hit her repeatedly, knocking her to the floor. Foster then apparently joined defendant to "assist" in Amy's discipline. Beth testified that both Foster and defendant were striking Amy, who at that point had been at least partially undressed by defendant. Defendant and Foster used both their hands and a paddle on the child, and were also biting her. In addition, Beth testified that Foster put a wastebasket on Amy's head and hit her on the head with his fist.[3] Eventually, defendant knocked the child backwards and she fell, hitting her head on the closet door.

[1]All statutory references hereinafter are to the Penal Code unless otherwise indicated.

[2]Although evidence as to incidents over the course of a few months prior to Amy's death was admitted, the major focus at trial was on the events of the day of her death. Because of the nature of the legal discussion which follows, factual background beyond the scope of that particular day is unnecessary.

[3]Apparently Beth was in another room during the incident but claimed she could see "a little bit" despite her testimony that both the door to the room she was in and the door to Amy's room were closed.

Amy stiffened and went into respiratory arrest. Defendant and Foster took her to the hospital, where defendant admitted that she "beat her too hard." She also stated that Foster had not come home until after the incident. Amy died that evening. Her injuries were consistent with compressive force caused by numerous blows by hands, fists, and a paddle. The severe head injury that was the direct cause of death occurred within an hour before the child was brought to the hospital.

Defendant testified that although she had spanked Amy on the day in question, she then left Amy in the children's room. Foster, believing additional discipline was warranted, went into the room, closed the door and began shouting at Amy. Although defendant heard thumping noises, she was not overly concerned because Foster had behaved similarly in the past and Amy had not been injured. After a half hour, defendant became somewhat worried and entered the room. She observed that Amy had a puffy lip, and bite marks and bruises all over her lower body. Foster left the room at defendant's request after defendant said she would continue the discipline. Defendant then shouted at Amy for 15 to 20 minutes to allow Foster time to "cool off." To avoid the possibility that Foster might also attack Beth, she took Beth into another bedroom and closed the door. Foster returned to the children's room and began slapping Amy because she would not look at him. Defendant testified she was afraid that if she interfered she would become the object of Foster's attack. She stated that although she realized that Amy was being abused, she did not believe the child's life was in danger. Defendant eventually did intervene, at which point Amy stiffened and fainted. Defendant expressed a desire to take the child to hospital, but Foster objected because of his concern about the possible effect on his probation status. Defendant therefore agreed to take all responsibility for Amy's injuries and initially did so in her statement at the hospital. As noted above, however, defendant later denied any active involvement in the beating that led to Amy's death.

I

The court gave the jury the standard instructions defining murder, malice aforethought, second degree murder, second degree felony murder, and manslaughter. The second degree felony-murder instruction (CALJIC No. 8.32 (4th ed. 1979)) informed the jury that an unlawful killing, whether intentional, unintentional, or accidental, is second degree murder if it occurs during the commission of a felony inherently dangerous to human life, and that felony child abuse (§ 273a, subd. (1)) is such a crime. ▮ Defendant contends that on the facts of this case the crime of felony child abuse was an integral part of and included in fact within the homicide, and hence that it merged into the latter under the rule of *People v. Ireland* (1969) 70

Cal.2d 522, 538-540 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].
We agree.

■ Our opinions have repeatedly emphasized that felony murder, although the law of this state, is a disfavored doctrine: "We have recognized that the rule is much censured 'because it anachronistically resurrects from a bygone age a "barbaric" concept that has been discarded in the place of its origin' ([*People* v. *Phillips* (1966) 64 Cal.2d 574, 583, fn. 6 (51 Cal.Rptr. 225, 414 P.2d 353)]) and because 'in almost all cases in which it is applied it is unnecessary' and 'it erodes the relation between criminal liability and moral culpability' (*People* v. *Washington* (1965) 62 Cal.2d 777, 783 [44 Cal.Rptr. 442, 402 P.2d 130])." (*People* v. *Dillon* (1983) 34 Cal.3d 441, 463 [194 Cal.Rptr. 390, 668 P.2d 697].) Accordingly, we have reiterated that this "highly artificial concept" (*Phillips, supra,* at p. 582) "should not be extended beyond any rational function that it is designed to serve." (*Washington, supra,* at p. 783.) "Applying this principle to various concrete factual circumstances, we have sought to insure that the [doctrine] . . . be given the narrowest possible application consistent with its ostensible purpose—which is to deter those engaged in felonies from killing negligently or accidentally" (*People* v. *Satchell* (1971) 6 Cal.3d 28, 34 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]).

In accord with this policy, we restricted the scope of the felony-murder rule in *Ireland* by holding it inapplicable to felonies that are an integral part of and included in fact within the homicide. In that case the defendant and his wife were experiencing serious marital difficulties which eventually culminated in defendant's drawing a gun and killing his wife. The jury was instructed that it could find the defendant guilty of second degree felony murder if it determined that the homicide occurred during the commission of the underlying felony of assault with a deadly weapon. Like all felony-murder instructions, this instruction had the "effect of 'reliev[ing] the jury of the necessity of finding one of the elements of the crime of murder' [citation] to wit, malice aforethought." (*People* v. *Ireland, supra,* 70 Cal.2d at p. 538.) We reasoned that "the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule 'beyond any rational function that it is designed to serve.' [Citation.] To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law. We therefore hold that *a second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which*

*the evidence produced by the prosecution shows to be an offense included in fact within the offense charged." (Id., at p. 539; italics added.)*

Very soon after *Ireland* we again had occasion to consider the question of merger in *People* v. *Wilson* (1969) 1 Cal.3d 431 [82 Cal.Rptr. 494, 462 P.2d 22]. There the defendant forcibly entered his estranged wife's apartment carrying a shotgun. Once inside the apartment, he fatally shot a man in the living room and proceeded to break into the bathroom where he killed his wife. The jury was instructed on second degree felony murder based on the underlying felony of assault with a deadly weapon, and convicted the defendant of second degree murder of the man. We determined that the predicate felony was a "necessary ingredient of the homicide" and reversed under *Ireland,* which explicitly prohibited use of the felony-murder rule in such circumstances. (*Id.,* at p. 438.)

The defendant was also convicted of the first degree murder of his wife, and we reversed that conviction on similar grounds. The jury was instructed on first degree felony murder on the theory that the homicide was committed in the course of a burglary because the defendant had entered the premises with intent to commit a felony, i.e., assault with a deadly weapon. We held that the felony-murder rule cannot apply to burglary-murder cases in which "the entry would be nonfelonious but for the intent to commit the assault, and the assault is an integral part of the homicide and is included in fact in the offense charged . . . ." (*Id.,* at p. 440.) Because under *Ireland* the "elements of the assault were necessary elements of the homicide" (*id.,* at p. 441), the felony of burglary based on an intent to commit assault was included in fact in the homicide. We reasoned that "Where a person enters a building with an intent to assault his victim with a deadly weapon, he is not deterred by the felony-murder rule. That doctrine can serve its purpose only when applied to a felony independent of the homicide." (*Id.,* at p. 440.) We concluded that an instruction telling the jury that "the intent to assault makes the entry burglary and that the burglary raises the homicide resulting from the assault to first degree murder without proof of malice aforethought and premeditation" used the same bootstrap reasoning we condemned in *Ireland.* (*Id.,* at p. 441.)

In *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], we followed *Wilson* in a slightly different factual situation. There the defendant entered a cottage with the intent to assault his estranged wife. In the course of the assault, her daughter intervened and was killed by the defendant. The People argued that this situation was distinguishable on the ground that the felony of burglary with intent to assault the wife was "independent of the homicide" of the daughter and therefore the felony-murder rule could apply. We rejected the theory, holding that "It would be anom-

alous to place the person who intends to attack one person and in the course of the assault kills another inadvertently or in the heat of battle in a worse position than the person who from the outset intended to attack both persons and killed one or both. [¶] Where a defendant assaults one or more persons killing one, his criminal responsibility for the homicide should not depend upon which of the victims died but should be the greatest crime committed viewing each victim of the attack individually and without regard to which in fact died. This result is reached in application of existing principles of transferred intent, and it is unnecessary to resort to the felony-murder rule." (*Id.*, at p. 189.) *Sears* thus reiterated our view that the felony-murder rule should be applied narrowly rather than expansively.

In addition to the offenses of assault with a deadly weapon and burglary with intent to assault, the felony of discharging a firearm at an inhabited dwelling (§ 246) has also been held to merge into a resulting homicide; thus, application of the felony-murder rule in this situation is similarly prohibited. (*People* v. *Wesley* (1970) 10 Cal.App.3d 902, 907 [89 Cal.Rptr. 377].) The *Wesley* court reasoned that because "The discharge of the firearms by the defendants was the means by which the homicide was committed and was *in fact* an 'integral part' and a 'necessary element' of the homicide," the felony was not independent of the homicide. (*Ibid.*)

Cases in which the second degree felony-murder doctrine has withstood an *Ireland* attack include those in which the underlying felony was furnishing narcotics (Health & Saf. Code, § 11501; *People* v. *Taylor* (1970) 11 Cal.App.3d 57 [89 Cal.Rptr. 697]); driving under the influence of narcotics (Veh. Code, § 23105; *People* v. *Calzada* (1970) 13 Cal.App.3d 603, 606 [91 Cal.Rptr. 912]); poisoning food, drink or medicine (§ 347; *People* v. *Mattison* (1971) 4 Cal.3d 177, 185-186 [93 Cal.Rptr. 185, 481 P.2d 193]); armed robbery (§ 211; *People* v. *Burton* (1971) 6 Cal.3d 375, 387 [99 Cal.Rptr. 1, 491 P.2d 793]); kidnaping (§ 207; *People* v. *Kelso* (1976) 64 Cal.App.3d 538, 542 [134 Cal.Rptr. 364]); and finally, felony child abuse by malnutrition and dehydration (§ 273a, subd. (1); *People* v. *Shockley* (1978) 79 Cal.App.3d 669 [145 Cal.Rptr. 200]) and felony child endangering by beating (§ 273a, subd. (1); *People* v. *Northrop* (1982) 132 Cal.App.3d 1027 [182 Cal.Rptr. 197]). With the exception of *Northrop,* however, none of these decisions involved an underlying felony that has as its principal purpose an assault on the person of the victim.

In *People* v. *Burton, supra,* we refined the *Ireland* rule by adding the caveat that the felony-murder doctrine may nevertheless apply if the underlying offense was committed with an "independent felonious purpose." (6 Cal.3d at p. 387.) Even if the felony was included within the facts of the homicide and was integral thereto, a further inquiry is required to determine

if the homicide resulted "from conduct for an independent felonious purpose" as opposed to a "single course of conduct with a single purpose" (*ibid.*). In cases like *Ireland,* the "purpose of the conduct was the very assault which resulted in death"; on the other hand, "in the case of armed robbery, as well as the other felonies enumerated in section 189 of the Penal Code, there is an independent felonious purpose, namely in the case of robbery to acquire money or property belonging to another." (*Ibid.;* italics deleted.)

██ Our task is to apply the foregoing rules to the offense at issue here—felony child abuse defined by section 273a, subdivision (1).[4] ██ We recognize that a violation of its terms can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect. Two threshold considerations, however, govern all types of conduct prohibited by this law: first, the conduct must be willful; second, it must be committed "under circumstances or conditions likely to produce great bodily harm or death." (§ 273a, subd. (1).) Absent either of these elements, there can be no violation of the statute.

The language of *Ireland, Wilson* and *Burton* bars the application of the felony-murder rule "where the purpose of the conduct was the very assault which resulted in death." (*People* v. *Burton, supra,* 6 Cal.3d at p. 387.) In cases in which the violation of section 273a, subdivision (1), is a direct assault on a child that results in death (i.e., causing or permitting a child to suffer or inflicting thereon unjustifiable physical pain), it is plain that the purpose of the child abuse was the "very assault which resulted in death." It would be wholly illogical to allow this kind of assaultive child abuse to be bootstrapped into felony murder merely because the victim was a child rather than an adult, as in *Ireland.*

In the present case the homicide was the result of child abuse of the assaultive variety. Thus, the underlying felony was unquestionably an "integral part of" and "included in fact" in the homicide within the meaning of *Ireland.*[5] Furthermore, we can conceive of no independent purpose for

---

[4]Section 273a, subdivision (1), provided: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding 1 year, or in the state prison for not less than 1 year nor more than 10."

[5]This conclusion is further supported by the finding of the trial court that to punish defendant for felony child abuse (and child beating) in addition to murder would constitute double punishment for the same act in violation of section 654.

the conduct, and the People suggest none; just as in *Ireland,* the purpose here was the very assault that resulted in death. To apply the felony-murder rule in this situation would extend it "beyond any rational function that it is designed to serve." (*People* v. *Washington, supra,* 62 Cal.2d 777, 783.) We reiterate that the ostensible purpose of the felony-murder rule is not to deter the underlying felony, but instead to deter negligent or accidental killings that may occur in the course of committing that felony. (*Id.,* at p. 781.) When a person *willfully* inflicts unjustifiable physical pain on a child under these circumstances, it is difficult to see how the assailant would be further deterred from killing negligently or accidentally in the course of that felony by application of the felony-murder rule.

In *Ireland,* we reasoned that one who violates section 245 is not deterred by the felony-murder rule. The elements of section 245 and the offense here are strikingly similar;[6] the principal difference is that the assault prohibited by section 273a is committed on a child. Accordingly, despite our deep abhorrence of the crime of child abuse, we see no escape from our duty to apply the merger doctrine we carefully enunciated in *Ireland* and its progeny. A sister jurisdiction has come to a similar conclusion, holding that "the felony committed, child beating, is not independent of the homicide and must merge into the homicide." (*Massie* v. *State* (Okla. Crim. 1976) 553 P.2d 186, 191, fn. omitted.)

A recent Court of Appeal decision discusses this subject. (*People* v. *Northrop, supra,* 132 Cal.App.3d 1027.) In *Northrop,* there was evidence that although the child often appeared bruised, scarred, and ill, none of these injuries was ever treated. As to the death itself, the autopsy revealed it was caused by organ and bone injuries resulting from the infliction of blunt force. Although the jury instruction therein was compatible with our holding today (*id.,* at p. 1033, fn. 3), the *Northrop* case declared there was no bar to application of the felony-murder rule because, it asserted, "Felony child abuse may be committed without either an intent to kill or the infliction of great bodily harm, and *thus* has a felonious design independent of the resulting homicide." (*Id.,* at p. 1036; italics added.) The court's conclusion that there was an independent purpose, however, does not follow from its premise as to possible lack of intent.

The *Northrop* court relied on *People* v. *Mattison, supra,* 4 Cal.3d 177, in which we held that the felony of poisoning did not merge into the resulting homicide. We reasoned that because the underlying felony was "not done with the intent to commit injury which would cause death," it had an

---

[6]Section 245, subdivision (a)(1), prohibits assault with a deadly weapon or "by any means of force likely to produce great bodily injury."

independent design. (*Id.*, at p. 185.) The independent design in *Mattison* was to furnish a dangerous substance for financial gain. As we have seen, however, by its very definition felony child abuse occurs only "under circumstances or conditions likely to produce great bodily harm or death." It is untenable to assert that there is an independent design when the crime of felony child abuse of the assaultive variety is willfully committed under such circumstances. To the extent *Northrop* is inconsistent with our reasoning herein, it is therefore disapproved.

The People argue that the present case is controlled by *People v. Shockley, supra,* 79 Cal.App.3d 669, but that decision is distinguishable on its facts. In *Shockley,* the death followed from malnutrition and dehydration; by contrast, the cause of death here was unquestionably a severe beating. The *Shockley* court envisaged this very distinction when it stated that "Where the underlying felony is based on an independent felony *not related to the assault causing the murder,* a different result follows." (*Id.,* at p. 676; italics added.) Here the death of the child was directly caused by an assault that in turn was the basis of the charge of felony child abuse; on these facts, *Ireland* compels application of the merger rule.[7]

It was therefore error to give a felony-murder instruction in this case. The People cannot show that no juror relied on the erroneous instruction as the sole basis for finding defendant guilty of murder. In these circumstances it is settled that the error must be deemed prejudicial. (*People v. Green* (1980) 27 Cal.3d 1, 73-74 [164 Cal.Rptr. 1, 609 P.2d 468]; *People v. Henderson* (1977) 19 Cal.3d 86, 96 [137 Cal.Rptr. 1, 560 P.2d 1180], and cases cited.) Because we reverse on this ground, we need not reach defendant's alternate claim that felony child abuse is not a felony inherently dangerous to human life within the meaning of the second degree felony-murder rule (see *id.,* at pp. 93-96), or other asserted errors in instructions bearing on the murder count.

## II

■ For the guidance of the court in the event of a retrial on the murder charge, however, we address defendant's contention that she is entitled to 26 rather than 10 peremptory challenges under Penal Code section 1070. The statute grants 26 challenges to a defendant charged with an offense punishable by death or "imprisonment . . . for life." In *People v. Yates* (1983) 34 Cal.3d 644, 654 [194 Cal.Rptr. 765, 669 P.2d 1], we construed the quoted language to include any indeterminate life term (i.e., "X years to life") that is as severe in its effect as a determinate (i.e., express) life

---

[7]Because of this factual distinction we need not address the question whether the merger doctrine applies when the defendant is guilty of felony child abuse of the nonassaultive variety, e.g., by extreme neglect—as in *Shockley*—or by failure to intervene when a child in his care or custody is placed in a life-endangering situation.

term. A defendant subject to the latter can be paroled after seven years. (§ 3046.) *Yates* dealt with a charge of first degree murder without special circumstances, a crime punishable by an indeterminate term of 25 years to life. (§ 190.) We observed that a defendant subject to the latter sentence cannot be paroled until he has served two-thirds of his sentence (*id.;* § 2931), i.e., 16 years and 8 months. Because that punishment is more severe than a determinate life sentence, we held that Yates was entitled to 26 peremptory challenges under section 1070.

The same analysis governs the case at bar. If defendant is convicted on retrial of second degree murder, she will be subject to an indeterminate term of 15 years to life. (§ 190.) She will not be eligible for parole until she has served two-thirds of that sentence, or 10 years. Because that sentence is thus more severe than a determinate life term, defendant will be entitled to 26 peremptory challenges under *Yates.*

### III

 Defendant contends that the felony child abuse and child beating statutes under which she was convicted are void because unconstitutionally vague. More specifically, she asserts that the two phrases—"unjustifiable physical pain or mental suffering" in section 273a, subdivision (1), and "cruel or inhuman corporal punishment or injury resulting in a traumatic condition" in section 273d[8]—do not provide a readily ascertainable standard of guilt, and therefore violate due process of law.

 "The fundamental policy behind the constitutional prohibition of vaguely worded criminal statutes was stated in *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, at page 453 . . .: 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' This court noted a further purpose of the prohibition in *People* v. *Mc-Caughan* (1957) 49 Cal.2d 409, 414 . . ., where Justice Traynor stated, 'A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed *as well as a standard for the ascertainment of guilt by the courts called upon to apply it.*' (Italics added.) The generally accepted criterion is whether the terms of the challenged statute are 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 . . . .)" (*People* v. *Superior Court (Engert)* (1982) 31 Cal.3d 797, 801 [183 Cal.Rptr. 800, 647 P.2d 76].)

---

[8]Section 273d provides: "Any person who willfully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for 2, 3 or 4 years, or in the county jail for not more than one year."

■ "The presumptive validity of a legislative act militates against invalidating a statute merely '. . . because difficulty is found in determining whether certain marginal offenses fall within . . . [its] language.'" (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081], quoting from *United States* v. *National Dairy Corp.* (1963) 372 U.S. 29, 32 [9 L.Ed.2d 561, 565, 83 S.Ct. 594].) We are not obligated to "consider every conceivable situation which might arise under the language of the statute" (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]), so long as it may be given "a reasonable and practical construction in accordance with the probable intent of the Legislature" (*County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 673 [114 Cal.Rptr. 345, 522 P.2d 1345]). ■ Defendant's conduct here clearly falls within the intended prohibitions of sections 273a, subdivision (1), and 273d.

The statutes in issue have withstood similar constitutional challenges in the Courts of Appeal. A number of decisions have held that section 273a, subdivision (1), is not void for vagueness (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 718 [140 Cal.Rptr. 299]; *People* v. *Harris* (1966) 239 Cal.App.2d 393, 397 [48 Cal.Rptr. 677]; *People* v. *Beaugez* (1965) 232 Cal.App.2d 650, 657 [43 Cal.Rptr. 28]; *People* v. *Curtiss* (1931) 116 Cal.App.Supp. 771, 778-781 [300 P. 801]), while others have so held as to section 273d (*People* v. *Thomas* (1976) 65 Cal.App.3d 854, 857 [135 Cal.Rptr. 644]; *People* v. *Cameron* (1975) 53 Cal.App.3d 786, 797 [126 Cal.Rptr. 44]). Defendant ignores fully half of these authorities, and only cursorily mentions the remainder. Under the doctrine of stare decisis, accordingly, we give the cited holdings great weight. (Cf. *Hoyt* v. *Board of Civil Service Commrs.* (1942) 21 Cal.2d 399, 402 [132 P.2d 804]; *Gardiner* v. *Royer* (1914) 167 Cal. 238, 242 [139 P. 75].) Moreover, we agree that these statutes are not so uncertain or indefinite as to render them invalid: they provide both notice to those whose activities are proscribed and guidance for the courts called on to apply them.

The judgment is reversed insofar as it convicts defendant of second degree murder; in all other respects the judgment is affirmed.

Bird, C. J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Richardson, J.,* concurred.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.