Filed 2/11/25

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TRAMELL VERNON TAYLOR,<br><br>    Defendant and Appellant. | F087652<br><br>(Super. Ct. No. SC082158A)<br><br><br>**OPINION** |


APPEAL from a judgment of the Superior Court of Kern County. Brian M. McNamara, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Petitioner Tramell Vernon Taylor petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder (§ 187, subd. (a)). The trial court conducted an evidentiary hearing and denied the petition on the ground petitioner "could still be convicted of the murder . . . under the [p]rovocative [a]ct [d]octrine" because he was a "major participant[] who acted with reckless indifference to human life when [he] participated in the incident which le[]d to the death . . . ."

Petitioner contends the order denying the petition must be reversed because the court's factual findings do not support a finding of guilt beyond a reasonable doubt on a valid legal theory. He points out that the court did not find that petitioner himself committed a provocative act that would support a provocative act theory of murder, and he contends substantial evidence would not support such finding. He therefore contends the court erred in finding him guilty of provocative act murder based on an act committed by his surviving accomplice. Additionally, he argues the court erred in finding he was guilty of murder under a felony-murder theory predicated on his being a major participant in a robbery who acted with reckless indifference to human life, inasmuch as felony murder is inapplicable where, as here, the killing is committed by a third party. In any event, he contends the court's finding of reckless indifference is unsupported by substantial evidence.

We hold the trial court misconstrued the elements of the applicable offense and thus did not find petitioner guilty of murder under a valid theory. We reverse the order denying the petition and remand for further proceedings on the resentencing petition.

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

2.

## FACTUAL BACKGROUND

Only a brief recitation of the facts is necessary to our disposition of this appeal.

In the late hours of December 5, 2000, petitioner, Darryl McCoy, and Dewayne Richardson gathered at McCoy's mother's house and discussed the prospect of robbing several men at a nearby motel. One of their proposed victims was Kendall M.,[2] a drug dealer who was living in room 4 of the motel.

In the early morning hours of December 6, 2000, Bobby S. saw McCoy at the motel with two men Bobby did not know. According to Bobby, McCoy was wearing a light-colored sweatshirt.

Around the same time Calvin M. arrived at the motel to pick up Kendall. He noticed three or four guys in the parking lot wearing dark clothing. He went to Kendall's room and informed him that the men looked suspicious, like they "might be getting geared up for something," and that Kendall should hurry up and get out of there as planned. Kendall closed the door and Calvin went back toward the car. Kendall spent a few minutes in his room, gathering his things to leave. Two other men – Shavon S. and Tyrone J. – were with him in the room at that time.

When Kendall opened the door to leave, he saw "silver guns" and "gun flashes." Kendall could not tell how many assailants were involved. Kendall ran to the bathroom and jumped in the shower for three to five minutes until the gunshots abated, after which he went out the bathroom window. Kendall was shot in the left arm, right arm, and abdomen but survived. The person who shot him was wearing dark clothing and his face was covered by a mask or a hood.

McCoy was fatally shot in his left chest. Kendall and his companions who were in room 4 at the time of the shooting denied having or seeing a gun in the room.

---

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

Shavon testified that he was on the bed in room 4 when "somebody ran in the room shooting." The first shooter shot from inside the doorway and a second shooter started shooting from outside, into the room. He did not see what they were wearing and did not see anyone get shot. He did not see anyone wearing light-colored clothing inside the room. He did not recall telling a detective that he saw two people in dark clothing shooting from the door, or that one of those shooters eventually came in. When law enforcement spoke with Shavon shortly after the shooting, petitioner's name was mentioned in a police radio broadcast and Shavon stated, "[petitioner] definitely shot [Kendall]." Shavon later explained to a detective that this statement was based on what he had heard from others and he did not see the shooting.

Tyrone testified he was asleep when the shooting began. He heard shots, jumped to the floor, and stayed there. He did not see whether anyone came into the room shooting or shot from outside.

Brian C. testified he was next door in room 3 when he heard gunshots. He later told a detective that he looked out the window and saw a man in a light-colored sweatshirt, standing outside the window of room 3, holding a handgun and shooting into room 4. At trial, Brian denied making this statement and denied looking out the window and seeing anything.

Extensive ballistics evidence was collected from the scene. Two .45-caliber unexpended bullets were found in the motel parking lot. An expended nine-millimeter projectile slug was found outside of room 3. Inside room 4, officers observed numerous bullet strikes and holes in the walls.

Eight nine-millimeter expended shell casings and four nine-millimeter bullets were recovered from the scene. All nine-millimeter shell casings were fired from the same gun. All nine-millimeter bullets were fired from the same gun, but could not be compared to the nine-millimeter shell casings. A nine-millimeter bullet recovered from Kendall was fired from the same gun as the other nine-millimeter bullets. Two .38-

4.

caliber expended bullets recovered from the scene were both fired from the same gun. An expended bullet recovered from McCoy's body, which was possibly a nine-millimeter or .38-caliber bullet, was not fired from any of the firearms that fired the other nine-millimeter and .38-caliber bullets located at the scene.

Petitioner, McCoy, and Richardson were believed to be members or associates of a gang, and Kendall was believed to be an affiliate of a rival gang.

## PROCEDURAL HISTORY

### I. Underlying Convictions

On June 27, 2001, petitioner and Richardson were convicted of conspiracy to commit robbery (§ 182, subd. (a)(1); count 1) and the first degree murder of McCoy (§ 187, subd. (a); count 2). The jury found true a gang enhancement to count 1 (§ 186.22, subd. (b)(1)) and a special circumstance that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)).[3] Additionally, as to petitioner, the court found true an on-bail enhancement. Petitioner was sentenced on count 2 to an indeterminate term of life without the possibility of parole, with a concurrent 12-year sentence imposed on count 1. On appeal, this court directed the trial court to make specified corrections to the abstract of judgment, but otherwise affirmed. (*People v. Taylor* (Oct. 14, 2003, F039096) [nonpub. opn.].)

### II. Section 1172.6 Petition

On July 12, 2019, petitioner filed a petition for resentencing pursuant to section 1172.6. The trial court summarily denied the petition without providing a statement of reasons. We reversed and remanded with directions to issue an order to show cause and, to the extent necessary, hold an evidentiary hearing. (*People v. Taylor* (Nov. 7, 2022, F082567) [nonpub. opn.].)

---

[3] As to count 1, the jury also found true a vicarious arming enhancement pursuant to section 12022.53, subdivision (d). However, this enhancement was later stricken by the court.

It appears that, at some point, Richardson also filed a petition for resentencing pursuant to section 1172.6, which is not a part of the record on appeal.

On remand, the court conducted a single evidentiary hearing as to both petitioner's and Richardson's petitions.[4] No new evidence was submitted and the People proceeded only on the transcripts from petitioner's trial. The court identified the issue before it as whether either petitioner or Richardson would "be found guilty as to the crimes charge[d] under current law." The People argued petitioner was guilty of felony murder under section 189, subdivision (e)(3) as a major participant in the robbery who acted with reckless indifference to human life. The prosecutor acknowledged that McCoy was not killed by a bullet fired by petitioner, but argued that petitioner committed a provocative act which caused return fire that killed McCoy. The prosecutor further argued the evidence showed that both petitioner and Richardson acted with reckless indifference to human life, which the prosecutor argued was sufficient to establish the requisite mens rea under either section 188 or 189.

Petitioner did not dispute that he was a major participant in the robbery but argued he did not act with reckless indifference to human life. He also argued the evidence was not clear as to whether he was a provocateur for purposes of a provocative act theory of murder.

The People responded that the evidence supported a finding that, among the three codefendants, petitioner was one of two who shot a firearm, and indeed may have been the first to open fire.

## III. Trial Court's Ruling

On February 21, 2024, the trial court denied petitioner's and Richardson's petitions together in a lengthy written order, which the court also read on the record.

---

[4] It appears both the People and petitioner filed briefing ahead of the evidentiary hearing. Only petitioner's brief is contained in the record on appeal.

In its ruling, the court acknowledged its role as factfinder in the evidentiary hearing and the prosecution's burden to prove, beyond a reasonable doubt, that petitioner is guilty of murder under current law. The court went on to state that the "critical determination" in this case was whether petitioner "w[as] a major participant who acted with reckless indifference to human life." (Boldface & capitalization omitted.) In setting forth the applicable law on this point, the court set forth the standard for aider and abettor liability under an implied malice theory and also set forth the standards for major participation and reckless indifference under a felony-murder theory. The court then set forth the applicable law on the provocative act doctrine before ultimately rejecting the petitions as follows:

> "Since the amendments to the Penal Code in 2019, [petitioner and Richardson] can now only be held accountable for the murder of McCoy as an aider and abettor to the robbery, or under the [p]rovocative [a]ct [d]octrine, if [petitioner and Richardson] personally acted with malice by being a 'major participant' who acted 'with reckless indifference to human life' so that each [of petitioner's and Richardson's] own personal intent to kill can be implied.

> "This Court agrees with the determination of the trial judge in ruling on the New Trial Motion, that [petitioner and Richardson] were convicted of murder under the [p]rovocative [a]ct [d]octrine. Contrary to the argument of [petitioner's and Richardson's] counsel at the evidentiary hearing, the evidence presented at the preliminary hearing and at trial clearly supports a finding that at least two people fired weapons into [r]oom 4. Thus, there was more than one provocateur. The Court concludes that even if McCoy fired the first shot that injured [Kendall], one or both of [petitioner and Richardson] also fired into [r]oom 4. McCoy was not the sole provocateur of his own death and at least one of his accomplices, [petitioner] or Richardson, was a surviving provocateur.

> "There were at least three different firearms which were discharged within or into [r]oom 4. Even assuming McCoy and one of the men inside [r]oom 4 discharged weapons, there is still one more gun which was fired. The Court concludes that [petitioner or Richardson] was the third shooter. The other . . . was an aider and abettor in the robbery and, therefore, also responsible for the [p]rovocative [a]ct [d]octrine murder.

7.

"Both [petitioner's and Richardson's] own actus reus support a finding that each was at least a direct aider and abettor in the robbery. Both [petitioner's and Richardson's] actions were not merely dangerous to life in some vague or speculative sense. Unlike the defendant in the case of *People v. Reyes*, (2023) 14 Cal.5th 981, who merely rode a bike down a road, [petitioner's and Richardson's] own personal actions, in bringing guns to the [m]otel room of a known rival gang member who was known to sell drugs from the [m]otel created a dangerous situation. The evidence is clear that multiple firearms were present and fired into [r]oom 4 and, therefore, the Court concludes that at least [petitioner or Richardson] had to have actually fired into [r]oom 4. McCoy would have been incapacitated in a matter of a second after being shot and, therefore, he could not have been the one who continued to shoot into [r]oom 4. It had to be one of the other accomplices – [petitioner] or Richardson.

"After reviewing the factors set forth in [*People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522], it is clear that [petitioner and Richardson] were both major participants who acted with reckless indifference to human life when they participated in the incident which le[]d to the death of McCoy. [¶] Both [petitioner] and Richardson were clearly involved in the planning of the criminal enterprise that led to the death of McCoy. They were both convicted by the jury of conspiracy to commit the robbery with the overt act of planning the robbery. The Court must accept this finding by the jury. However, the Court also makes the same factual finding based upon the record reviewed.

"There was no evidence presented regarding the role of the [petitioner and Richardson] in supplying the firearms but the Court finds that both [petitioner and Richardson] were at least carrying firearms. [Petitioner and Richardson] were aware of the presence of weapons in the hands of their accomplices. The preliminary hearing testimony of [a witness] was that [petitioner] admitted that both he and Richardson had guns during the incident. [Petitioner] had told [the witness] he had dropped his gun and Richardson's gun had jammed. [Petitioner] admitted that he was able to fire his gun later. The trial record also leads this Court to conclude that both [petitioner and Richardson] were carrying weapons. It is unfathomable that a gang member would go into the territory of a rival gang without bringing a weapon with him.

"Both [petitioner and Richardson] were well aware of the particular dangers posed by the nature of the crime of robbery of a drug dealer from a rival gang. The jury found the crime was done for the benefit of the criminal

8.

gang . . . . [Petitioner, Richardson, and McCoy] were well aware of each of their past criminal conduct.

"Both [petitioner and Richardson] were present at the scene of the killing and had been in a position to prevent the actual killing of their accomplice. They had ample opportunity to restrain McCoy and whomever else fired into [r]oom 4. At least [petitioner or Richardson] fired into [r]oom 4 and it was the return fire of those inside [r]oom 4 which le[]d to the death of McCoy.

"[Petitioner and Richardson], or their accomplice, McCoy, were the ones who initiated the use of lethal force. They could have prevented the blood shed at any time by simply not going to the [m]otel to attempt to rob a rival gang drug dealer.

"The Court finds that beyond a reasonable doubt [petitioner] and Richardson could still be convicted of the murder of McCoy under the [p]rovocative [a]ct [d]octrine even after the amendments to Penal Code Sections 188 and 189 which became effective on January 1, 2019." (Some italics omitted.)

## DISCUSSION

### I. Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) First, the bill narrowed the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).) Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony

9.

murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.) Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.) If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).)

At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).)

"Ordinarily, a trial court's denial of a section 1172.6 petition [following an evidentiary hearing] is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is

10.

reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citation.] But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

## II. The Court Did Not Find Petitioner Guilty of Murder Under a Valid Theory

Petitioner argues the court's factual findings do not support the ultimate finding that he is guilty beyond a reasonable doubt under a currently valid theory of murder. First, he argues that, to find petitioner guilty under a provocative act theory of murder, the court was required to find that petitioner himself committed a provocative act that provoked the shooting of McCoy. Petitioner points out the court did not make such finding, and he argues such finding would not be supported by substantial evidence. Accordingly, petitioner argues, the People failed to prove beyond a reasonable doubt that he is guilty of murder under the provocative act doctrine. Second, he argues, and the People concede, that in finding petitioner guilty of murder, the court seemingly relied on a felony-murder theory that is inapplicable in the context presented here, that is, a killing committed by a third party. Alternatively, assuming felony-murder principles are nonetheless relevant to petitioner's case, petitioner argues the court's finding that he acted with reckless indifference to human life is unsupported by the evidence. We address these arguments in turn, although in a different order than they are presented in petitioner's brief.

### A. General Principles of Provocative Act Murder

The provocative act doctrine arose as an alternative to felony-murder liability in circumstances where the killing was committed by a third party who was not involved in the perpetration of the underlying felony. The contours of the doctrine were first outlined in two California Supreme Court cases, *People v. Washington* (1965) 62 Cal.2d 777

(*Washington*), and *People v. Gilbert* (1965) 63 Cal.2d 690 (*Gilbert*), reversed on other grounds in *Gilbert v. California* (1967) 388 U.S. 263.

In *Washington*, two men attempted to rob a gasoline station. However, upon hearing someone yell " 'robbery,' " the proprietor of the gasoline station immediately shot and killed one of the perpetrators. The surviving perpetrator was convicted of the murder of his accomplice under a felony-murder theory. (*Washington*, *supra*, 62 Cal.2d at pp. 779–780.) Our Supreme Court reversed, holding that the felony-murder rule applied only to a killing committed "in the perpetration [of] or attempt to perpetrate" specified felonies, whereas a killing committed by the intended victim of the felony is "not committed to perpetrate the felony," but rather to thwart it. (*Id.* at p. 781.) The court noted, however, that "[d]efendants who initiate gun battles may also be found guilty of murder if their victims resist and kill. Under such circumstances, 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death.' " (*Id.* at p. 782.) In other words, a defendant who acted with malice in initiating a gun battle could be held liable for the resulting killing of an accomplice, even if he did not personally fire the lethal shot.

About seven months later, in *Gilbert*, the high court addressed the gun battle that *Washington* foreshadowed. Gilbert and his accomplice, Weaver, robbed a bank while another accomplice, King, waited in a getaway car. (*Gilbert*, *supra*, 63 Cal.2d at pp. 696–698.) As Gilbert and Weaver were leaving the bank, Gilbert fired upon a responding officer, fatally wounding him. As they fled, a different officer fatally shot Weaver. (*Id.* at p. 697.) Both Gilbert and King were convicted of Weaver's murder. (*Id.* at p. 696.) The high court recognized that Gilbert and King could not be convicted of Weaver's murder under the felony-murder rule, but stated that "the evidence . . . would support a conviction of first degree murder on the ground that Weaver was killed in response to a shooting initiated by Gilbert." (*Id.* at p. 703.) Because the jury was not

12.

instructed on the latter theory, the high court reversed the murder convictions and set forth in detail the principles that would apply on retrial. (*Id.* at pp. 704, 712.)

First, the high court held that malice, as required to support a murder conviction, could be implied when "[a] defendant *or his accomplice* ' "for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death," ' " and that initiating a gun battle was such an act. (*Gilbert*, *supra*, 63 Cal.2d at p. 704, italics added.) Second, the court held that "[t]he killing must be attributable to the act of the defendant *or his accomplice*" (*ibid.*, some italics omitted): "When the defendant *or his accomplice*, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, *not merely to the commission of a felony*, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life" (*ibid.*, italics added). Third, the court held that, "[u]nder the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice. To be so guilty, however, the accomplice must cause the death of another human being by an act committed in furtherance of the common design." (*Id.* at p. 705.) Finally, the court held that, when murder is otherwise established under sections 187 and 188, "section 189 may be invoked to determine its degree." (*Gilbert*, at p. 705.)

"*Gilbert* established that provocative act murder, unlike felony murder, requires proof of malice aforethought," but expressly required only that the provocateur, e.g., the perpetrator who initiated the gun battle, act with that mental state. (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1177 (*Lee*).) *Gilbert* thus left open the possibility that surviving nonprovocateur accomplices could be liable for murder based on a provocateur accomplice's mental state. "The Supreme Court confirmed in subsequent cases that a defendant could be guilty of provocative act murder based on the malicious and

13.

provocative acts of his confederates, without a showing that the defendant himself harbored malice."[5] (*Lee*, *supra*, at p. 1178; see *id.* at pp. 1178–1179 [collecting cases].) For many years thereafter, courts held that "a nonprovocateur defendant could be convicted of murder based on a finding that his provocateur accomplice acted with malice aforethought." (*Lee*, at p. 1179.)

It was not until the decision in *People v. Concha* (2009) 47 Cal.4th 653 (*Concha*) that the high court suggested a murder conviction under a provocative act theory requires proof of an individual defendant's own mental state.[6] In *Concha*, three men – Concha, Hernandez, and Sanchez – attempted to murder a fourth man. The intended victim responded by fatally stabbing Sanchez, and Concha and Hernandez were convicted of Sanchez's first degree murder. (*Concha*, *supra*, at p. 658.) The primary issue in *Concha* was whether such a killing could be classified as first degree, as opposed to second degree, murder. (*Id.* at pp. 658, 660.) On that issue, the court held that the degree of murder was to be determined by the individual defendant's own mental state, such that a defendant who personally acts willfully, deliberately, and with premeditation and intent to kill would be guilty of first degree murder. (*Id.* at pp. 661–662.)

---

[5] However, "when the deceased himself is the sole provocateur, his nonprovocateur accomplice cannot be liable for murder because the provocateur did not cause the death of another but only his own death." (*Lee*, *supra*, 95 Cal.App.5th at p. 1179, citing *People v. Antick* (1975) 15 Cal.3d 79, 91, superseded by constitutional amendment on another ground as stated in *People v. Castro* (1985) 38 Cal.3d 301, 308.)

[6] For this reason, Courts of Appeal are divided on the question of whether a pre-*Concha* murder conviction under a provocative act theory necessarily establishes a petitioner's ineligibility for resentencing as a matter of law for purposes of section 1172.6. (See, e.g., *People v. Antonelli* (2023) 93 Cal.App.5th 712, 720–721, rev. granted Oct. 18, 2023, S281599; *Lee*, *supra*, 95 Cal.App.5th at pp. 1175–1181.) This question currently is pending review by our Supreme Court. (*Antonelli*, *supra*, 93 Cal.App.5th 712.) In this case, the parties do not argue petitioner's conviction of provocative act murder establishes his ineligibility for resentencing as a matter of law, and the ultimate disposition of *Antonelli* does not affect our analysis.

In addition, the court's analysis more broadly clarified that the provocative act doctrine is a theory of proximate causation, which does not otherwise affect the general principle that murder liability requires proof that the individual defendant personally harbored malice. (*Concha*, *supra*, 47 Cal.4th at pp. 660–661; see *id.* at p. 663 [provocative act murder is "merely shorthand used 'for that category of intervening-act causation cases in which, during the commission of a crime, the intermediary (i.e., a police officer or crime victim) is provoked by the defendant's conduct into [a response that results] in someone's death' "].) The court explained: "To satisfy the actus reus element of murder, an act of either the defendant *or an accomplice* must be the proximate cause of death. [Citations.] For the crime of murder, as for any crime other than strict liability offenses, 'there must exist a union, or joint operation of act and intent, or criminal negligence.' [Citation.] To satisfy the mens rea element of murder, the defendant must personally act with malice aforethought." (*Id.* at p. 660.) Accordingly, "a defendant may be liable for murder when he possesses the appropriate mens rea and either the defendant or an accomplice causes an unlawful death." (*Ibid.*)

The high court reiterated this requirement in *People v. Gonzalez* (2012) 54 Cal.4th 643. There, the high court summarized the provocative act doctrine as follows: "A murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing. [Citations.] A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response. [Citations.] Although the doctrine has often been invoked in cases where the defendant initiates or participates in a gun battle [citation], it is not limited to this factual scenario. [Citations.] Malice will be implied if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger." (*Id.* at p. 655.)

The foregoing cases make clear two essential elements of the provocative act doctrine. First, for the provocative act doctrine to apply, the defendant or a surviving accomplice must commit a life-endangering provocative act, and a third party must kill in response to that act. Second, the defendant, whether the provocateur or not, must have acted with a mens rea sufficient to support a conviction for murder.

Although not specific to the provocative act doctrine, our Supreme Court has recently clarified the mens rea required under a direct aiding and abetting theory of implied malice murder after the passage of Senate Bill No. 1437. (*Reyes*, *supra*, 14 Cal.5th at p. 991.) Because *Reyes* clarifies the mens rea necessary to support a conviction for murder as a direct aider and abettor, it is relevant to nonprovocateur accomplice liability in the context of the provocative act doctrine. *Reyes* provides: "[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life." (*Ibid*., italics omitted.) Where the life-endangering act is a shooting, the aider and abettor must know the perpetrator intended to shoot at the victim, intend to aid the perpetrator in the shooting, know that the shooting was dangerous to life, and act in conscious disregard for life. (*Id.* at p. 992.) Where a trial court conducts a section 1172.6 evidentiary hearing and sustains an implied malice murder conviction on a direct aiding and abetting theory, but its factual findings fail to address these elements of the offense, the court's decision is based on an error of law and subject to reversal unless the record establishes the court would have reached the same result under the correct legal standards. (*Reyes*, at p. 992.)

16.

**B.    The Court Relied on an Inapplicable Felony-murder Theory To Find Petitioner Guilty of Murder**

We agree with petitioner that the trial court appears to have based its finding of guilt on a felony-murder theory that is inapplicable under the facts of this case.

We first acknowledge that the basis for the court's ruling is somewhat unclear. The court's order included boilerplate language regarding direct aiding and abetting liability under a heading describing felony-murder principles. The court described felony-murder principles at length under a separate subheading. The court seemingly conflated into a single mens rea the discrete concepts of express malice, implied malice, and reckless indifference for felony-murder accomplices by stating that petitioner could only be held accountable for murder if he "personally acted with *malice* by being a '*major participant*' who acted '*with reckless indifference to human life*' so that [his] own personal *intent to kill* can be *implied*." (Italics added.) The court's imprecise language and inclusion of inapplicable boilerplate text makes it difficult to discern the legal basis for the court's ruling.

On the whole, however, the court's findings suggest the court determined petitioner was guilty of murder under a felony-murder theory. The court identified the question of whether petitioner was a major participant who acted with reckless indifference to human life – phrases that permit felony-murder liability for accomplices under section 189[7] – as "the critical determination in this case." (Boldface & capitalization omitted.) The court then found petitioner was a major participant who acted with reckless indifference to human life when he "participated in the incident which le[]d to the death of McCoy." The court set forth detailed findings on the *Banks* and

---

[7] As stated, Senate Bill No. 1437 narrowed the scope of felony-murder liability to (1) actual killers, (2) those who aided and abetted the killing with intent to kill, and (3) those who are major participants in a qualifying felony and who act with reckless indifference to human life. (§ 189, subd. (e)(1)–(3); *People v. Arellano*, *supra*, 16 Cal.5th at pp. 467–468.)

17.

*Clark* factors necessary to find petitioner guilty under a felony-murder theory. On this basis, the court found petitioner ineligible for resentencing.

"Absent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.) In this case, however, that presumption is rebutted by the court's ruling. It is undisputed that the felony-murder rule is inapplicable where, as here, the killing was committed by a third party who was not involved in the perpetration of the underlying felony. (*Washington*, *supra*, 62 Cal.2d at p. 781.) The court's determination that petitioner is guilty of provocative act murder under a felony-murder theory is legally erroneous.

### C. Petitioner May Be Found Guilty of Murder as a Nonprovocateur Accomplice

As petitioner points out, the court declined to determine whether petitioner fired a gun into the motel room during the gun battle, and thus declined to find whether petitioner himself was a provocateur. However, the court determined that McCoy was not the sole provocateur in the gun battle. (See *Lee*, *supra*, 95 Cal.App.5th at p. 1179 ["[W]hen the deceased himself is the sole provocateur, his nonprovocateur accomplice cannot be liable for murder because the provocateur did not cause the death of another but only his own death."].) Rather, the court determined that either petitioner or Richardson, or both of them, also fired into the room. Thus, the court expressly found that petitioner was *at least* a nonprovocateur accomplice. Our Supreme Court's case law makes clear that a nonprovocateur accomplice may be found guilty of murder if he possesses the requisite mens rea. (*Concha*, *supra*, 47 Cal.4th at p. 660.) Petitioner's assertion that only a surviving *provocateur* may be held liable for the death is incorrect.

### D. The Court's Finding of Reckless Indifference Is Insufficient To Support a Finding that Petitioner Is Guilty of Murder as a Nonprovocateur Accomplice

The People argue the court's finding of reckless indifference includes a finding of implied malice sufficient to support the court's finding that petitioner is guilty of murder

as a nonprovocateur accomplice.[8]  We disagree.  Even if we assume, as the People contend, that conscious disregard for life may be subsumed within a finding of reckless indifference, the court's findings in this case do not reflect that petitioner is guilty of provocative act murder as a nonprovocateur accomplice.[9]

Here, the court found petitioner acted with reckless indifference to human life when he "participated in *the incident* which le[]d to the death of McCoy."  (Italics added.)  All the court's corollary findings regarding the *Banks* and *Clark* factors pertain to petitioner's participation in the robbery.  None of the findings pertain to the provocative act of initiating a gun battle.  Under the provocative act doctrine, it is the provocative act, and not merely the underlying criminal conduct, which serves as the life-endangering act that permits a finding of implied malice.  (*Gilbert*, *supra*, 63 Cal.2d at p. 704.)  Moreover, aside from the felony-murder context, participating in an "incident" or other criminal conduct while harboring malice is no longer sufficient to support a valid theory of murder liability.[10]  (See *Curiel*, *supra*, 15 Cal.5th at pp. 462–463 ["The Legislature sought to

---

[8] The People do not contend the court's findings would support an implied finding that petitioner is guilty of murder under an express malice theory, and we therefore do not consider such theory.

[9] Because we conclude the finding does not support a valid theory of guilt, we do not consider petitioner's contention that the finding of reckless indifference is unsupported by substantial evidence.

[10] Prior to the passage of Senate Bill No. 1437, *People v. Mejia* (2012) 211 Cal.App.4th 586, 603, relied on *Concha* to suggest a nonprovocateur accomplice must only aid and abet the underlying felony with malice.  (*Mejia*, at p. 603 ["With respect to the *mental* element of provocative act murder, a defendant cannot be vicariously liable; he must personally possess the requisite mental state of malice aforethought when he either causes the death through his provocative act *or aids and abets in the underlying crime the provocateur who causes the death*." (italics added)].)  However, *Concha* does not support this proposition.  (*Concha*, *supra*, 47 Cal.4th at p. 662.)  As *Concha* states, provocative act murder is not "an independent crime," but a theory of " 'intervening-act causation' " that requires the same mens rea required for more traditional theories of murder.  (*Concha*, at p. 663.)  Additionally, *Reyes* makes clear that aider and abettor liability for implied malice murder requires a showing of implied malice with regard to

limit murder liability to established theories that incorporated the requisite intent; it did not intend to impose an intent requirement untethered from existing theories of liability."]; see also *id.* at p. 470 [intent to aid in an underlying offense does not establish a valid theory of murder, even where the aider and abettor acts with intent to kill, if the aider and abettor does not subjectively know that life-endangering conduct will occur and does not intend to aid in that conduct]; *Reyes*, *supra*, 14 Cal.5th at p. 992 ["[I]mplied malice murder requires attention to the aider and abettor's mental state concerning the life endangering act committed by the direct perpetrator, such as shooting at the victim."].) The court's finding that petitioner participated in a robbery with reckless indifference to human life does not equate to a finding that petitioner, as a nonprovocateur accomplice, aided and abetted provocative act murder with implied malice.

To find petitioner guilty of implied malice murder based on a provocative shooting initiated by Richardson, the court was required to find that petitioner knew Richardson intended to shoot at Kendall and/or his associates, intended to aid Richardson in the shooting, knew that the shooting was dangerous to life, and acted in conscious disregard for life. (*Reyes*, *supra*, 14 Cal.5th at p. 992.) Because the court did not so find, we cannot uphold its decision under an implied malice theory of provocative act murder for a nonprovocateur. The court's decision reflects that the court misunderstood the legal requirements of this offense and, given the nature of the error, "it is 'uncertain whether the trial court would have reached the same result using correct legal standards.' " (*Ibid.*) The appropriate remedy is reversal of the order denying the petition and remand for further proceedings consistent with this opinion. (*Ibid.*) We express no view on the merits of the petition under a proper application of the elements of provocative act murder.

---

the life-endangering act, rather than any underlying crime. (*Reyes*, *supra*, 14 Cal.5th at p. 992.)

## **DISPOSITION**

The order denying the petition is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.


DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


SMITH, J.