[No. E001779. Fourth Dist., Div. Two. June 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ANDREW ROSE, Defendant and Appellant.

814

## COUNSEL

Glenn Durfee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KAUFMAN, J.—In a one hundred eighteen count amended information filed against defendant John Andrew Rose and four others, defendant was charged with, inter alia, one count of murder (Pen. Code, § 187), thirty-four counts of robbery in an inhabited dwelling (Pen. Code, § 213.5), twenty-two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), eighteen counts of false imprisonment (Pen. Code, § 236), sixteen counts of burglary (Pen. Code, § 459), three counts of robbery (Pen. Code, § 211), two counts of attempted murder (Pen. Code, §§ 187, 664) two counts of receiving stolen property (Pen. Code, § 496), one count of conspiracy to commit robbery and burglary (Pen. Code, § 182), one count of attempted robbery of an inhabited dwelling (Pen. Code, §§ 213.5, 664), one count of attempted robbery (Pen. Code, §§ 211, 664), one count of assault with intent to commit oral copulation (Pen. Code, § 220) and one count of unlawful driving or taking of a vehicle (Veh. Code, § 10851).

In a negotiated plea bargain, defendant pled nolo contendere to the one count of murder and agreed that it be set as first degree, and the court dismissed all remaining counts charged and sentenced defendant to the term prescribed by law, twenty-five years to life in state prison. (Pen. Code, § 190.)

Defendant argues his sentence was disproportionate to his individual culpability and therefore constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and article I, section 17, of the California Constitution. Defendant also contends the felony-murder rule, upon which his guilty plea to the charge of first degree murder was ostensibly based, is unconstitutional because it constitutes cruel and unusual punishment and because it deprives him of due process of law. None of defendant's contentions being meritorious, the judgment shall be affirmed.

### Facts and Procedural Background

The facts surrounding the crimes charged against defendant are drawn in part from the trial records of his two codefendants in the murder and numerous other counts, Phillip Edward Walz and Richard David Perez.

On April 29, 1983, Phillip Walz suggested that he, Richard Perez, and defendant "cruise around . . . to find some easy money somewhere." The plan was to simply go up to someone and take their money. Defendant drove the other two in his car seeking a suitable victim. Defendant knew Walz had a gun in the car. Defendant also had a gun of his own, which Walz had given to him the week before. Defendant let Perez use that gun.

Following Walz's directions, Rose drove around until Walz saw a man in a lighted garage and told defendant to stop. Defendant parked his car and waited while Walz and Perez got out, put on ski masks and, each armed with a .357 handgun, approached the open garage door. Walz and Perez approached the man in the garage, the victim Michael Herr, and Walz informed him "that this was a holdup." Perez meanwhile entered the house and confronted the victim's wife, Georgia Herr, instructing her to keep quiet. The victim managed to remove Walz's ski mask and then threatened Walz, stating, "I know your face." Walz then shot Michael Herr in the chest. Hearing a shot, Perez returned to the garage in time to see Walz shoot the victim in the head. Walz and Perez ran back to defendant's car and the three left quickly with defendant driving. Michael Herr later died of the gunshot wounds he sustained to the head and chest.

The trials of Walz and Perez were severed from defendant's and from each other and were held prior to the entry of defendant's nolo contendere plea. Walz was found guilty of first degree murder with three special circumstances findings. The jury also found him guilty of 68 other counts ranging from attempted murder to the unlawful taking of a vehicle. Walz was sentenced on the murder to a state prison term of life without possibility of parole plus a two-year enhancement for the use of a firearm. He also received a consecutive term of 79 years and 8 months on the remaining

counts. In a later trial, Perez was found guilty of first degree murder and 15 other crimes. He received a state prison term of 27 years to life for the murder plus an additional consecutive term of 32 years 8 months on the remaining counts.

After jury selection began defendant negotiated a plea bargain with the prosecution in which he agreed to plead nolo contendere to one count of murder in exchange for dismissal of all other counts. The plea bargain also provided that the Board of Prison Terms could then review all of the dismissed counts, except the one count of assault with intent to commit oral copulation, in determining an eventual release date. At the time defendant entered his plea the court carefully inquired as to his consent to and understanding of the plea bargain. The record shows defendant repeatedly stated he understood the agreement and the maximum sentence he could expect.

In explaining the effect of a nolo contendere plea, the court told defendant he was admitting that he was a principal in a felony (robbery) in which someone was killed. The court was careful to specify the admission of guilt in no way was an admission defendant had pulled the trigger. The court then fully advised defendant of the constitutional rights he was waiving by pleading nolo contendere and stated on the record that the plea appeared free and voluntary.

The court found a satisfactory factual basis for the plea after defendant admitted, in itemized statements made in open court, that he drove Walz and Perez to the vicinity of the victim's home with the purpose of helping them to commit a robbery there, that Walz and Perez walked into the garage armed with guns while he waited in the car, that he drove Walz and Perez away from the scene knowing shots had been fired, and that the victim Michael Herr had met his death at that time as a result of gunshot wounds inflicted by either Walz or Perez. In pronouncing a judgment of guilt for the crime of first degree murder, the court specifically referred to the felony-murder rule.

When it sentenced defendant the court was informed he had suffered prior convictions on two burglary offenses, one offense of reckless driving, one offense of drunk driving, and one offense of possessing an illegal knife.

### Discussion

Defendant made no motion to withdraw his plea. On appeal he argues his first degree murder sentence was so disproportionate to his individual culpability as to constitute cruel and unusual punishment under the Eighth

Amendment of the United States Constitution and article I, section 17, of the California Constitution. He requests we compare the 25-year-to-life felony-murder sentence he received as the "wheelman" in a residential robbery with other decisions in which felony-murder defendants have succeeded in obtaining a reduction of their sentences contending their punishment was not proportionate to their individual culpability. (See, e.g., *People v. Dillon* (1983) 34 Cal.3d 441, 477-489 [194 Cal.Rptr. 390, 668 P.2d 697]; *Enmund* v. *Florida* (1982) 458 U.S. 782, 798-800 [73 L.Ed.2d 1140, 1152-1154, 102 S.Ct. 3368].)

We have some doubt of the propriety of reviewing the proportionality issue in a case where the defendant's sentence resulted from a freely negotiated plea bargain in which he was fully informed of the sentencing alternatives. The record contains every indication defendant carefully considered all possible outcomes in the criminal prosecution against him. He faced a vast multitude of charges separate from the murder, stemming from a five-month crime spree against at least ten different victims, involving robberies, burglaries, assaults, offenses of false imprisonments, and all manner of attempted felonies. He stated he was advised by counsel about the plea bargain and the record shows such advisal was reinforced by the trial court. As the party facing this plethora of criminal liability defendant was in a vastly better position to evaluate the proportionality between the sentence he bargained for and his actual culpability for the numerous offenses charged than we as an appellate court reviewing a paper record of the sentence received under the plea bargain agreement. If defendant believed the sentence required by law for first degree murder was too severe or that a lighter sentence was probable were a jury to determine the extent of his guilt, he should not have entered the plea bargain.

We observe also in this regard that the calculus of proportionality in this case should not be based, as defendant urges, on the crime of first degree murder alone. Though the judgment properly names only that offense as the basis for defendant's sentence because that was the crime to which he pled nolo contendere, the negotiated plea actually resulted from defendant's expectation of possible convictions of the entire panoply of charges against him, not just the murder charge alone. In a real and practical sense, then, the murder cases defendant would have us compare factually to this case are inapposite.

However, even if the proportionality of defendant's sentence should be viewed as being attributable solely to his role in the first degree felony murder alone, it is not disproportionate to his culpability. Though the facts as to defendant were never actually established because defendant never stood trial, the records from the trials of his codefendants and his own

admissions to the court at the time he pled nolo contendere show defendant assisted in the planning and execution of a residential robbery, that he and his codefendants drove through residential neighborhoods seeking out a suitable victim, that defendant knew his codefendant Walz had a gun, that defendant furnished codefendant Perez with his own gun for use in the robbery, that he dutifully waited in the car outside the residence while the robbery was in progress, and that he drove his codefendants away from the scene after Walz had fatally shot the victim. Defendant's characterization of his function in this crime as the mere "wheelman" thus does not accurately reflect his true role as a full participant in the planning and execution of a dangerous felony. Defendant knew or is chargeable with knowledge of the extreme risk of death or serious injury engendered by an armed invasion of another person's residence with intent to rob the person of his money. The victim's resulting death was precisely the event sought to be deterred by the felony-murder rule, and the sentence defendant received is not disproportionate to his culpability.

*People* v. *Dillon, supra,* 34 Cal.3d 441, is readily distinguishable from the case at bar. Dillon, who was a 17-year-old high school student at the time of the crime, was tried and convicted on a felony-murder theory of killing a man during an attempted robbery at a marijuana plantation. Both the jury and the trial court expressed reluctance to apply the felony-murder rule to the facts of the case. Dillon's coperpetrators received only "petty chastisements" for their role in the crime though they accompanied defendant to the site of the offense and were armed with dangerous weapons. Most importantly, the court viewed Dillon as an unusually immature youth. "He had no prior trouble with the law, and . . . was not the prototype of a hardened criminal who poses a grave threat to society. The shooting in this case was a response to a suddenly developing situation that defendant perceived as putting his life in immediate danger. . . . [T]here is ample evidence that because of his immaturity he neither foresaw the risk he was creating nor was able to extricate himself without panicking when that risk seemed to eventuate." (*Id.,* 34 Cal.3d at p. 488.) In view of this evidence, Dillon's jury was reluctant to convict him of first degree murder and sought ways to be more lenient than the felony-murder rule would allow. (*Id.,* at pp. 490-491, Kaus, J., conc.)

Our efforts at comparing *Dillon* to the instant case are hindered because defendant pled guilty and the record thus contains no neutral factfinder's assessment of his relative culpability in the murder. However, the record does show defendant was an adult at the time of the offense and there is no indication of inexperience and immaturity such as that so important to the decision in *Dillon.* Defendant had suffered several prior convictions and in the instant case faced criminal liability for a 5-month crime spree resulting

in some 100 charges in addition to the murder. Finally, compared to the sentences received by his coperpetrators (Walz: life without possibility of parole plus a consecutive term of 79 years 8 months; Perez: 27 years to life plus a consecutive term of 32 years 8 months), defendant's sentence is clearly not so disproportionate as Dillon's sentence was to those of his coperpetrators.

Contrary to defendant's argument, *Enmund* v. *Florida, supra,* 458 U.S. 782 is not comparable to the instant case. There the United States Supreme Court applied a constitutional rule of proportionality to a situation where a "wheelman" in a residential robbery was given the *death penalty*. An extensive comparison of the *Enmund* facts to the noncapital case at bar would not be helpful.

Defendant argues that *"Dillon* and *Enmund* both prohibit application of the felony-murder rule where the outcome is so unjust as to constitute cruel and unusual punishment." While defendant's characterization of the law is fairly accurate, we do not agree defendant's 25-year-to-life sentence in this case is so disproportionate to his culpability as to be properly characterized as unjust.

■ Defendant also urges "The felony murder rule is unconstitutional since it lacks both a legitimate deterrent rationale and a legitimate retributive rationale." We disagree. The felony-murder rule in California has been consistently upheld against constitutional challenges. "This court has re-iterated numerous times that 'the purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit.' (*People* v. *Washington* (1965) 62 Cal.2d 777, 781 . . . .) The Legislature has said in effect that this deterrent purpose outweighs the normal legislative policy of examining the individual state of mind of each person causing an unlawful killing to determine whether the killing was with or without malice, deliberate or accidental, and calibrating our treatment of the person accordingly. Once a person perpetrates or attempts to perpetrate one of the enumerated felonies, then in the judgment of the Legislature, he is no longer entitled to such fine judicial calibration, but will be deemed guilty of first degree murder for any homicide committed in the course thereof." (*People* v. *Burton* (1971) 6 Cal.3d 375, 388 [99 Cal.Rptr. 1, 491 P.2d 793]; see also *People* v. *Turner* (1984) 37 Cal.3d 302, 327 [208 Cal.Rptr. 196, 690 P.2d 669]; *People* v. *Dillon, supra,* 34 Cal.3d at p. 450.) ■ Assuming arguendo the proportionality of defendant's sentence in this case is to be viewed solely on the basis of his liability for felony murder rather than the some 100 criminal acts with which he was charged, we still perceive no constitutional infirmity in the application of the felony-murder rule here. Defendant was actively involved in the

planning and perpetration of a robbery which resulted in the death of its victim. We are satisfied there is ample deterrent and retributive rationale for upholding the sentence for which defendant bargained.

Defendant lastly contends "By imposing punishment for murder while requiring only the mens rea of the underlying felony, the felony murder rule violates the due process requirement of individual culpability for serious nonregulatory crime." This contention is nothing but a restatement of the argument rejected by the court in *People* v. *Dillon, supra,* 34 Cal.3d 441, 472-476, i.e., that it is unconstitutional to remove the element of intent to kill from those required to be proven by the prosecution in a murder case. Unresolved due process issues may remain after *Dillon.* (See *id.,* 34 Cal.3d 441, 494-499, Bird, C. J., conc.) However, defendant's sentence in the case at bar was the product of a plea bargain negotiated with knowledge of the sentence prescribed by law for first degree murder and was founded on the entire panoply of criminal liability defendant potentially faced. It is inappropriate to address the due process implications of the felony-murder rule when the rule was not truly *applied* by the court or by a jury. ■ Furthermore, this constitutionally based attack on the felony-murder rule goes to the validity of defendant's nolo contendere plea itself, not just his sentence. Penal Code section 1237.5 constitutes an insuperable impediment to such an attack following a plea of nolo contendere.

*Disposition*

Judgment affirmed.

Rickles, Acting P. J., and McDaniel, J., concurred.