Filed 6/11/25  P. v. Pryor CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B336786 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A915615) |
| v. | |
| MARION MARC PRYOR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Ellison, Judge.  Affirmed.

Nancy Gaynor and David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant and appellant Marion Marc Pryor challenges the trial court's denial of his petition for resentencing under Penal Code section 1172.6.[1]  In 1988, a jury convicted Pryor of one count of first degree murder (§ 187, subd. (a)) with a felony-murder special circumstance (§ 190.2, subd. (a)(17)).  Pryor argues that the jury instructions allowed the jury to convict him on a theory of liability that is no longer valid, and the superior court erred by finding he failed to make a prima facie case that he was eligible for resentencing.  We disagree and affirm.  The jury instructions, which did not reference accomplices or other participants in the crime, and the jury's verdict, show unequivocally that Pryor was convicted as the actual killer.

**FACTUAL BACKGROUND AND PRIOR PROCEEDINGS**

Because courts may not engage in factfinding at the prima facie stage (*People v. Lewis* (2021) 11 Cal.5th 952, 972), we summarize the offense conduct briefly and only as background for understanding the issues.  This account is based on our prior opinion in Pryor's direct appeal of his conviction.  (*People v. Pryor* (Dec. 28, 1989, B036280) [nonpub. opn.].)

The victim, Doreen Bandosingh, was Pryor's stepsister, and they lived together in the same home.  On June 24, 1986, Pryor's father found Bandosingh's body under some blankets in a closet in Pryor's bedroom.  She was nude from the waist down, with tape covering her mouth, nose, and eyes, and an electrical cord was pulled tight around her neck.  A representative of the coroner's office took swabs from Bandosingh's vagina, which

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

showed the presence of semen.  The cause of death was determined to be strangulation and suffocation.

Bandosingh's sister testified that she and Bandosingh were both afraid of Pryor, to such an extent that Bandosingh slept with a knife under her pillow.  Pryor was at home when Bandosingh's body was discovered, but he denied killing her.

Pryor was taken into custody about two weeks later and initially denied any involvement.  An officer testified that Pryor said that Bandosingh consented to have sex with him, but that she attacked him before he could finish, and he hit her on the back of her head with his fist.  He then sodomized her with her consent, but she screamed, so he got a roll of tape and covered her face with it.  Pryor confessed that he then put Bandosingh in a closet and strangled her with a piece of electrical cord for five minutes.  Pryor later testified that he was elsewhere at the time of the crime and denied making any confession to the police.

The People charged Pryor with one count of murder (§ 187, subd. (a)), one count of forcible rape (former § 261, subd. (2)),[2] and one count of forcible sodomy (former § 286, subd. (c)).[3]  The trial court granted Pryor's motion to dismiss the sodomy count pursuant to section 995.

The jury instructions were based on the then-current CALJIC pattern instructions.  The jury was instructed on the

_____

[2] This provision has subsequently been recodified as section 261, subdivision (a)(2).  (See Sen. Bill No. 2586 (1989-1990 Reg. Sess.) (Stats. 1990, ch. 630, § 1).)

[3] This provision has subsequently been recodified as section 286, subdivision (c)(2)(A).  (See Assem. Bill No. 1844 (2009-2010 Reg. Sess.) (Stats. 2010, ch. 219, § 6).)

3

definition of homicide, in an instruction based on CALJIC No. 8.00: "The word homicide means the killing of one human being by another, either lawfully or unlawfully. As used in these instructions the word homicide includes murder and manslaughter, which are unlawful, and the acts of excusable and justifiable homicide, which are lawful."

The jury also received an instruction defining murder, based on CALJIC No. 8.10. It read, "Defendant is charged in [c]ount I of the information with the commission of the crime of murder, a violation of [s]ection 187 of the Penal Code. [¶] The crime of murder is the unlawful killing of a human being with malice aforethought or the unlawful killing of a human being which occurs during the commission or attempt to commit a felony inherently dangerous to human life. [¶] In order to prove the commission of the crime of murder, each of the following elements must be proved:

"1. That a human being was killed,

"2. That the killing was unlawful, and

"3. That the killing was done with malice aforethought or occurred during the commission or attempt to commit a felony inherently dangerous to human life. Rape is a felony inherently dangerous to human life."

Next, the jury was instructed on first degree felony murder, based on CALJIC No. 8.21: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of rape, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree. [¶] The specific intent to commit a rape and the

4

commission [of] such crime must be proved beyond a reasonable doubt."

The jury also received two instructions on the special circumstance allegation. The first was based on CALJIC No. 8.80: "If you find the defendant[] in this case guilty of murder of the first degree, you must then determine if murder was committed under the following special circumstance: commission of a rape. [¶] A special circumstance must be proved beyond a reasonable doubt. [¶] If you have a reasonable doubt as to whether a special circumstance is true, it is your duty to find that it is not true. [¶] In order to find the special circumstance charged in this case to be true or untrue, you must agree unanimously."

Second, the jury received an instruction specific to the felony-murder special circumstance, based on CALJIC No. 8.81.17. Because this instruction is central to this case, we preserve the points where the trial court struck out portions of the pattern instruction by writing "[redacted]" at these points.

"To find that the special circumstance, referred to in these instructions as murder in the commission of a rape, is true, it must be proved:

"1a. That the murder was committed while the defendant was engaged in [redacted] in the commission or [redacted] of a rape[,] or

"2. That the defendant intended to kill a human being [redacted,]

"3. That [the] defendant intended to commit a rape[,]

"4. That the murder was committed in order to carry out or advance the commission of the crime of rape or to facilitate the escape therefrom or to avoid detection. In other words, the

5

special circumstance referred to in these instructions is not established if the [redacted] rape was merely incidental to the commission of the murder."

The jury received no instructions on aiding and abetting, accomplices, or attributing guilt based on any other person's actions. It also did not receive any instruction on the natural and probable consequences doctrine.

The jury convicted Pryor of first degree murder and forcible rape, and found true the special circumstance allegation that he committed the murder while engaged in the commission of a rape. (§ 190.2, subd. (a)(17).) The trial court sentenced him to life without the possibility of parole.

Pryor filed his petition for resentencing on January 12, 2024. In the petition, which was prepared by his attorneys, Pryor argued that he had made a prima facie case for resentencing because the jury instructions allowed him to be convicted of murder without a showing that he was the actual killer or acted with the intent to kill. The district attorney opposed the petition, arguing that the instructions required the jury to find that Pryor was the actual killer. The resentencing court agreed with the district attorney and denied the petition at the prima facie stage.

## DISCUSSION

### A.  Background on Resentencing under Section 1172.6

Section 1172.6 allows certain defendants convicted of murder, attempted murder, or voluntary manslaughter to petition for their convictions to be vacated and to be resentenced. To be eligible for relief under the statute, it must be the case that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) These

6

changes to the law, enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015), amended section 188 to provide that, "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).)  One effect of this amendment was to abolish the natural and probable consequences doctrine as a basis of liability for murder.  (*People v. Gentile* (2020) 10 Cal.5th 830, 847-848.)  Prior to the enactment of Senate Bill No. 1437, a defendant could be convicted of murder under this doctrine simply by acting as an accomplice in an offense that foreseeably resulted in the commission of a murder, even if the defendant did not share the mens rea of the killer.  (*People v. Curiel* (2023) 15 Cal.5th 433, 449; *People v. Chiu* (2014) 59 Cal.4th 155, 164-165.)

In addition to abolishing the natural and probable consequences doctrine, Senate Bill No. 1437 also amended section 189 to restrict the application of the felony-murder doctrine, requiring greater personal culpability for a defendant to be liable under that doctrine.  (See *People v. Strong* (2022) 13 Cal.5th 698, 707-708.)  To convict a defendant of felony murder under the new law, the prosecution must prove that the defendant either was the actual killer (§ 189, subd. (e)(1)); acted with the intent to kill in aiding, abetting, commanding, encouraging, or soliciting the actual killer (*id.*, subd. (e)(2)); or "was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)).

To obtain relief under section 1172.6, a petitioner must first make a prima facie case for eligibility.  (See *id.*, subd. (c).)  "[T]he prima facie inquiry under [section 1172.6,] subdivision (c) is

limited," and the resentencing court must " ' "take[] [the] petitioner's factual allegations as true" ' " and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 971, 972.) The court may deny a defendant's petition if the record refutes the defendant's allegation that he is eligible for resentencing (*id.* at p. 971), but this does not occur "unless the record conclusively establishes every element of the offense." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)

## B. The Resentencing Court Did Not Err by Denying the Petition on the Basis of the Jury Instructions and Verdicts

Pryor argues he has made a prima facie case for resentencing because the jury instructions allowed him to be convicted of felony murder without the mens rea required under current law. He focuses primarily on the instruction for the felony-murder special circumstance. At the time Pryor committed the murder in 1986, this special circumstance applied only if the defendant acted with the intent to kill. (*People v. Banks* (2015) 61 Cal.4th 788, 798, citing *Carlos v. Superior Court* (1983) 35 Cal.3d 131, 135, overruled in *People v. Anderson* (1987) 43 Cal.3d 1104, 1115.)[4] However, the jury instruction on the

---

[4] The law regarding the felony-murder special circumstance has changed several times in subsequent years. (See *People v. Banks*, *supra*, 61 Cal.4th at p. 798 [summarizing the changes].) By the time of Pryor's trial in 1988, the Supreme Court had expanded the scope of the special circumstance to apply to defendants who did not intend to kill, so long as they actually killed the victim, rather than merely aided and abetted.

8

special circumstance in this case did not accurately reflect the law, or the pattern instruction on which it was based, CALJIC No. 8.81.17, because of the inclusion of the word "or," which appears in handwriting in the instruction the trial court gave:

"To find that the special circumstance, referred to in these instructions as murder in the commission of a rape, is true, it must be proved:

"1a. That the murder was committed while the defendant was engaged in . . . the commission . . . of a rape *or*

"2. That the defendant intended to kill a human being." (Italics added.)[5]

Pryor argues, and we agree, that the inclusion of the extraneous "or" allowed the jury to find the special circumstance true even if it did not believe he intended to kill, so long as it found beyond a reasonable doubt that the murder was committed while he was engaged in the commission of a rape.

We disagree, however, that this is sufficient to make a prima facie case of eligibility for resentencing. Instead, despite the extraneous "or" in the special circumstance instruction, the record of conviction, including the remaining jury instructions and verdicts, demonstrates without any need for factfinding that the jury necessarily convicted Pryor as the actual killer. The instructions told the jury that murder is a type of homicide,

---

(*Ibid.*, citing *People v. Anderson*, *supra*, 43 Cal.3d at p. 1147.) The jury instruction in Pryor's case did not reflect this change, however.

[5] The trial court's oral instruction to the jury omitted this "*or,*" but when a discrepancy exists between the written and oral version of a jury instruction, the written instruction controls. (*People v. Mills* (2010) 48 Cal.4th 158, 201.)

9

which "means the killing of one human being by another." (CALJIC No. 8.00.) Murder in turn means "[t]hat a human being was killed" in an "unlawful" manner either "with malice aforethought or . . . during the commission . . . [of] a felony inherently dangerous to human life." (CALJIC No. 8.10.) With no instructions on aiding and abetting or any other form of vicarious liability, the jury could not have convicted Pryor of murder without finding that he actually killed Bandosingh. Nothing in the instructions on felony murder and the special circumstance called this conclusion into question.

In a similar case where a defendant was prosecuted for felony murder with no instructions on aiding and abetting or other perpetrators, the court in *People v. Harden* (2022) 81 Cal.App.5th 45 likewise affirmed the denial of a petition for resentencing at the prima facie stage because "[t]he instructions and verdicts show the only path to convicting [the defendant] of first degree felony murder with special circumstances and a personal-infliction-of-great-bodily-injury enhancement was based on a finding she actually killed" the victim. (*Id.* at p. 56.)

Pryor argues that *Harden* is distinguishable because the jury instructions in that case were written in the active voice. Instead of defining murder as "the unlawful killing of a human being with malice aforethought or . . . during the commission" of a specified felony, as in this case, the jury in *Harden* was instructed, based on a newer version of CALJIC No. 8.10, that " '[e]*very person who unlawfully kills* a human being with malice aforethought or during the commission . . . of a [specified felony], is guilty of murder.' " (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 58.) This difference is immaterial here. The jury was told that Pryor was charged with murder, and that murder was "the

10

unlawful killing of a human being." With no further instruction on accomplices or a defendant's responsibility for the acts of another, there was no reasonable interpretation of the instruction that allowed the jury to convict Pryor without finding he was the killer.

Next, Pryor contends that the court in *Harden* erred by overlooking the possibility of a conviction upon a finding that the defendant merely caused the death of the victim, rather than actually killing him. There is indeed a difference between those two concepts, such as when a defendant orders someone else to kill or aids and abets in a killing. Thus, in *People v. Garcia* (2020) 46 Cal.App.5th 123, where the victim died by asphyxiation, the defendant who put tape over the victim's mouth was an actual killer. A codefendant who handed the tape to the killer might have done " 'an act that caused the death of another person' " (*id.* at p. 150) but was not the killer. Causing a death may be distinct from actually killing even in cases with only a single perpetrator. For example, in *People v. Vang* (2022) 82 Cal.App.5th 64, the court reversed the finding of a felony-murder special circumstance based on an instruction that confused the two concepts. (*Id.* at p. 91.) In that case, the evidence indicated that the victim died after jumping out of a moving truck while trying to escape from a kidnapping. (*Id.* at p. 73.) The defendant might have caused the victim's death but was not the actual killer. (See *id.* at pp. 84-91.)

In another similar case, *People v. Lopez* (2022) 78 Cal.App.5th 1, the court reversed the denial of a petition for resentencing at the prima facie stage. In that case, however, the instructions stated, "that to find [the] defendant guilty of felony murder, it had to find he committed robbery and '[w]hile

11

committing robbery, the defendant *caused the death of another person.*'" (*Id.* at p. 16.) The defendant made a prima facie case for resentencing because the jury could have convicted him pursuant to this instruction without finding he personally killed the victim. (*Id.* at pp. 16-20.) The court in *Harden* reached the opposite conclusion because "[u]nlike *Lopez*, the jury in this case was not asked whether the defendant merely 'committed an act that *caused* the death'" of the victim. (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 58.)

Pryor argues that even without an instruction using the phrase "caused the death of another person," the jury still could have convicted him without finding he actually killed. He cites the Merriam-Webster dictionary, which defines "kill" as "to deprive of life" or "cause the death of." (<https://www.merriam-webster.com/dictionary/kill> [as of June 9, 2025].) But in the vast majority of cases, especially those involving only one perpetrator, there is no difference between those two terms—a person who causes someone's death actually kills that person. We are skeptical that the term "kill" can be interpreted as equivalent to "cause the death of" in California law. As the court stated in *Harden*, in common understanding, the term "'"the person who unlawfully kills" . . . refer[s] to the person who inflicted the fatal injury.'" (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 55, quoting *People v. Bell* (2020) 48 Cal.App.5th 1, 16.) Indeed, under a longstanding rule, first degree felony murder does not apply where a defendant indirectly causes a death by a provocative act, but instead "requires that the felon or his accomplice commit the killing." (*People v. Washington* (1965) 62 Cal.2d 777, 781.) Even in *People v. Garcia* (2022) 82 Cal.App.5th 956, where the victim died from cardiac arrhythmia

an hour after the defendant robbed him, the court held that the defendant was the actual killer because "[h]e was the sole perpetrator of a robbery where a death occurred as a direct consequence of his actions." (*Id.* at p. 969.) It was irrelevant that the victim's preexisting heart condition contributed to his death, or that a healthy victim would not have died from the assault. (*Id.* at pp. 970-971.)

Even if we assume a jury could hypothetically interpret "kill" as including indirectly causing a victim's death, the record shows that it did not happen in this case. Although neither we nor the resentencing court may "engage in 'factfinding involving the weighing of evidence or the exercise of discretion' " (*People v. Lewis, supra,* 11 Cal.5th at p. 972) at the prima facie stage, we may review the record of conviction to determine the basis of a defendant's conviction. (See *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1202.) If "[n]o other contributing factor was alleged to be involved in [the victim]'s death," we may conclude that "the record conclusively establishes [the] defendant was [the] actual killer." (*Ibid.*) As part of our analysis, we may consider the closing arguments to understand the basis of the jury's conviction. (See *People v. Rushing* (2025) 109 Cal.App.5th 1025, 1033-1035; *People v. Lopez, supra,* 78 Cal.App.5th at p. 16.) Had any question of an indirect cause of death been presented, the court would have been required to instruct the jury as to proximate causation (*People v. Bernhardt* (1963) 222 Cal.App.2d 567, 591), and we would have expected to see some mention of the possibility in the closing arguments. No such theory was argued

13

to the jury,[6] and no such instruction was given.  The prosecution's theory was that Pryor raped Bandosingh and then intentionally strangled her to death.  The defense did not contend that Pryor indirectly caused the victim's death.  It argued Pryor had consensual sex with Bandosingh, did nothing to cause her death, and that the People failed to perform a full investigation and had not proven beyond a reasonable doubt he had anything to do with her death.

Because "it would have been impossible on this record for a jury to have made the findings it did without finding that [the defendant] was [the] actual killer" (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1248), Pryor is ineligible for resentencing, and the trial court did not err in denying his petition at the prima facie stage.  (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [affirming the denial of a petition at the prima facie stage because "the record here makes clear that [the defendant] was the actual killer and the only participant in the killing"].)

---

[6] Trial transcripts (including the closing arguments) were attached to Pryor's section 1172.6 petition on a compact disc.  As a supporting attachment to the petition, they should have been included in the appellate record.  (Cal. Rules of Court, rule 8.320(d)(1)(C).)  We sua sponte augment the appellate record to include them.  (Cal. Rules of Court, rules 8.155, 8.340(c).)

14

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.


15